## W. F. DAVIDSON v. M. E. ALEXANDER.

*Confessed Judgment—Corporations—Parol Evidence.*

1. Judgment confessed under section 326 of the Code must contain a concise, verified statement of the facts, circumstances, business transaction and consideration out of which the indebtedness arose, to meet the requirements of the statute; and this, to give the court jurisdiction and enable other creditors to test the *bona fides* of the transaction by which a particular debt is preferred; *Hence* a judgment confessed upon the statement that defendant is indebted to plaintiff in a certain sum "arising from the acceptance of a draft," setting out a copy thereof, is irregular and void.

2. A judgment against one as president of a corporation does not affect the property of the corporation.

3. Where a judgment is confessed by one person against himself and so entered of record, parol evidence is not admissible to show that it was intended to have been entered against another.

(*Ins. Co.* v. *Hicks*, 3 Jones, 58; *Aycock* v. *R. R. Co.*, 6 Jones, 232, cited and approved.)

CIVIL ACTION tried at Fall Term, 1880, of MECKLENBURG Superior Court, before *Seymour, J.*

In this action, the plaintiff seeks to recover of the defendant, who is the sheriff of Mecklenburg county, for refusing to apply a sum of money, which he had realized by a sale of the lands of an incorporated company known as "The Empire Gold Mining Company," in satisfaction of a judgment in plaintiff's favor against the company.

In support of his allegations, the plaintiff offered in evidence a record of a judgment by confession, made before the clerk of the county on the 22nd day of August, 1871, of which the following is a copy:

" *W. F. Davidson v. J. A. Smith, President Empire Mining Company.* I, J. A. Smith, president of the Empire Mining Company, defendant, confess judgment in favor of W. F. Davidson, the plaintiff above named, for three thousand eight hundred and one dollars and sixty-four cents, with interest thereon from the 30th day of December, 1868, and authorize the entry of judgment therefor against said Empire mining company. This confession of judgment is for a debt now justly due said plaintiff by said defendant, arising from an acceptance of a draft, of which the following is a copy:

'CHARLOTTE, N. C., 1st October, 1868. Exchange for $3,801.64.

Sixty days after date pay to the order of M. P. Pegram, cashier, thirty-eight hundred and one dollars and sixty-four cents, value received, and charge the same to account of

W. F. DAVIDSON.

To J. A. SMITH, ESQ.,
    *Charlotte, N. C.*'

On the face of which was written:

' Accepted, payable at the First National Bank of Charlotte.       J. A. SMITH.'

Witness my hand and seal, this the 22nd day of August, 1871.' " (Signed by J. A. Smith, president Empire mining company, and verified by his oath and witnessed by E. A. Osborne.)

Thereupon, the clerk entered judgment, in favor of the plaintiff, against J. A. Smith, President, &c., on the said 22nd of August.

He also showed, that an execution had issued under this judgment and gone into the hands of defendant's predeces-

sor, who had returned the same, as "levied on the lands of the defendant," it being the same land afterwards sold by the defendant, which execution was in the following words:

"Whereas, judgment was rendered on the 22nd day of August, 1871, in an action between W. F. Davidson, plaintiff, and J. A. Smith, Prest. Empire mining company, defendant, in favor of said W. F. Davidson against the said J. A. Smith, Prest., &c., for the sum of forty-two hundred and eighty-three dollars, and thirty cents, as appears to us by the judgment roll, filed in the office of said court, and whereas, the said judgment was docketed in said county on the 22nd day of August, 1871, and the sum of forty-two hundred and eighty-three dollars and thirty cents, is now actually due thereon, with interest on thirty-eight hundred and one dollars and sixty-four cents, from the 22nd day of August, 1871, and also the sum of eight dollars and seventy cents, for costs and charges in the said suit, and expenses allowed by law: You are therefore commanded, as often before commanded to satisfy the said judgment out of the personal property of the said defendant within your county, or if sufficient personal property cannot be found, then out of the real property in your county belonging to such defendant, on the day when the said judgment was so docketed in your county or at any time thereafter in whose hands soever the same may be, and further, to return this execution before the judge of our superior court, on the 8th Monday after the 4th Monday in September, 1871.

Witness E. A. Osborne, clerk of our said court, at office in Charlotte, on the 8th Monday, after the 4th Monday in March, 1871, and the 95th year of American Independence."

(Issued the 22nd day of August, 1871, and signed by the clerk.)

On the 12th day of February, 1873, the plaintiff caused another execution to issue, similar in all respects with the

above, except as to date, which went into the defendant's hands, and was returned by him, unsatisfied, and since then no other execution has issued under said judgment.

The plaintiff was then examined as a witness for himself, and testified that the debt for which the judgment was confessed was due him from the company as commissions for services rendered it in the purchase of the very land sold by the defendant, and that J. A. Smith was the president of the company. He also proved that the defendant sold the land as the property of the company on the 5th day of September, 1874, and that he had applied the proceeds to another judgment against the company, junior in point of date, but which was admitted to be regular.

The defendant, in his answer, admits the sale, and the application of the proceeds, as alleged, but defends the action upon the ground that the judgment confessed in favor of plaintiff was irregular, because not conducted according to the provisions of the statute, and that at most it was not a judgment against the " Empire Gold Mining Company," but against J. A. Smith individually. The court intimated the opinion that the judgment was not in law one against the said company, and in deference thereto, the plaintiff took a nonsuit and appealed.

*Messrs. Shipp & Bailey*, for plaintiff.
*Messrs. Jones & Johnston*, for defendant.

RUFFIN, J. As the case discloses the fact that there was no execution under the plaintiff's judgment in the defendant's hands at the time of his sale, he has a complete defence against the action, as his sale could only convey to the purchaser the land subject to the lien of plaintiff's judgment, provided it be a prior valid one. But as neither the counsel for plaintiff or defendant urged this point, notwithstanding their attention was called to it, we presume it is the wish

of the parties, in order to avoid further litigation, to have settled the points as to the validity and effect of the judgment confessed to the plaintiff before the clerk, and therefore we have given those matters our consideration.

The provisions of the Code of Civil Procedure, sections 325, 326, under which this proceeding was attempted, have seldom been before this court for consideration, and in no instance, so far as is known to us, have they been the subject of judicial construction by the court. That duty devolves upon us, and in its discharge we have endeavored fairly to ascertain the legislative will, being careful not by a too narrow construction to thwart it, or by a too liberal one to extend it beyond that which was intended.

Of the requirements of the statute, some are matters of form and possibly may be deemed merely directory; but there are others essentially matters of substance, a strict compliance with which is absolutely demanded, and without which, the proceeding is void. Amongst the latter, as it seems to us, is that contained in sub-division 2, of section 326, of the code, to the effect that the statement in writing, which the party confessing the judgment is required to sign and verify by his oath, *must state concisely the facts out of which it* (the indebtedness) *arose, and must show that the sum confessed therefor* is justly due.

The object of the statute in this is to protect the other creditors of the debtor; to enable them, not only to see the extent of his liabilities, but to test the *bona fides* of this particular debt to which he is giving a preference; and that they may have full opportunity to do this, the parties are commanded to spread upon the record specifically the circumstances and business transactions out of which it originated. A mere statement that the defendant is indebted to the plaintiff in a sum certain " arising from the acceptance of a draft, of which the following is a copy," &c., falls far short of the demands of the statute. What was the real

40

consideration of that draft? the time and the manner of its creation? is the information required to be given, and this, that others interested may be able to try the truth of the statement, by comparing it with their previous knowledge of the condition and conduct of the parties. It is not at all the shape of the demand, or its amount, at the time the judgment is confessed, that the law demands to know, but its previous history and its exact consideration.

Compared with these requirements, how meagre is the information, as to the consideration of the debt and the transaction out of which it grew, is the statement of the debtor when confessing the judgment under consideration? All the judgment roll discloses is that on the 1st of October, 1868, the creditor, W. F. Davidson, gave a sixty day draft on J. A. Smith, Esq., for the sum of $3,801.64, which the said J. A. Smith accepted, payable at bank, and that upon such a draft, judgment was confessed, on the 22nd of August, 1871, by Smith as "President of the Empire mining company," without explaining, or attempting to explain, what connection the company had with the transaction, or in what matter it became indebted to the party to whom the judgment was confessed. When the creditor after a lapse of ten years comes to be examined as a witness in his own behalf, he is able to say that the debt was due him from the company on account of services rendered it in effecting the purchase of a certain tract of land.

Why was this information not given at first, that others interested, and who might know the parties and their circumstances and business transactions and connections, might test its accuracy and good faith? Could there be any more striking illustration of the wisdom of the requirements of the statute than is afforded by this case? especially if we consider, in connection with it, the plaintiff's letter, written on the 7th of March, 1872, and made a part of the case, in which he declares that he has caused an execution to issue

under this judgment, so confessed to him, not because the amount of the judgment was truly due him from the company, but in order that he might purchase the very land, out of which this controversy has grown, for another party, at a nominal price, and as a means of curing a defective title to the land which that party had previously obtained.

So that our conclusion is that the judgment, confessed as it was, upon so defective a statement of the facts out of which the debt arose, is void, a proper statement being necessary to give the court jurisdiction.

But supposing this was not so, and that this was a valid judgment between the parties, and would, upon a direct proceeding to impeach it, be so declared to be, it still remains for us to enquire how far it affected the lands of the Empire gold mining company, and whether the same could be sold thereunder.

By reference to the record it will be seen that "J. A. Smith" is the party, declared, in the statement which makes part of the judgment-roll, to be the defendant. It is true he speaks of himself as "president of the Empire company," but the company, though judgment is authorized to be entered against it, is nowhere spoken of as the defendant, or as owing the debt for which the judgment is confessed; on the contrary, the statement acknowledging the debt, which the statute directs to be signed by *the defendant*, is signed by *J. A. Smith, president of Empire mining company*, and the draft, which is the only evidence of indebteness whatsoever, is one of J. A. Smith, simply, and is accepted by him in his individual capacity, and not as president of the company; and, above all, when the clerk comes to enter up judgment on the judgment docket, it is entered, not against the company, but against *J. A. Smith, Prest. Empire mining company;* and when executions are issued under the judgment, they are, in every instance, issued against J. A. Smith

as the defendant, and the sheriff is commanded to make the money out of his property.

In the case of the *Insurance Company* v. *Hicks*, 3 Jones, 58, the judgment was, like this, rendered against one " Jordan, president of the Mantio company," and under an execution, running in the same way, the sheriff seized the property of the company and sold it, and this court held that he could not justify under it, that the judgment was against Jordan individually, and not against the company.

The plaintiff's counsel assumed the further position that the judgment was intended to have been confessed by the Empire gold mining company, and that he should have been permitted to show this by parol, and he cited us to Freeman on Judgments, section 154, as authority for this. This author does say, that it sometimes happens that the name of a party to a judgment is incorrectly stated, and that when such is the case the party intended to be named in the judgment may be connected with it by proper averments, supported by proper proofs, and he refers us to many decided cases in support of his proposition. In looking to the cases, we find they all go just to the extent that when a party is sued by a wrong name, and the writ is actually served on the right person and he fails to appear and plead the matter in abatement, and judgment goes against him, though by the wrong name, he is concluded. So in this court, in the case of *Aycock* v. *R. R. Co.*, 6 Jones, 232, where the writ issued against an officer of the company and was served on him, but the declaration was against the company and the judgment was so entered against the company, it was held that the company was bound by the judgment, and the case was distinguished from the other case of *Insurance Company* v. *Hicks, supra,* on the very ground that the judgment had been entered, not against the officer but against the company. But no case goes to the extent of saying that, where a judgment is confessed by one person,

against himself, and it is so entered of record, it may be shown that it was intended to have been entered against another. And we take it, that under our new system there will be less liberality in such matters than under the old ; for judgments have ceased to be merely the recorded conclusions of the law as to the rights of suitors in court, but have been made to perform some of the functions of a mortgage, and to act as securities for future and contingent liabilities ; so that it is, now, of as much consequence that judgments should be truly docketed, as that mortgages and deeds in trust should be truly registered.

We concur with the rulings of His Honor and declare there is no error.

No error. Affirmed.