MERCHANTS NATIONAL BANK OF RICHMOND, VA., et al. v.
THE NEWTON COTTON MILLS.

*Preference of Creditors—Corporation—Confession of Judgment—Validity of Confession of Judgment.*

1. An insolvent corporation may, under the laws of this State, exercise preference in favor of creditors, not corporators or officers, provided it is not done with a purpose to defeat, delay or hinder other creditors or parties in interest (*Hill* v. *Lumber Company*, 113 N. C., 173, and *Killian* v. *Foundry Company*, 99 N. C., 501 distinguished), and subject (in the case of preference by a conveyance by deed) to the right of other creditors to avoid the preference by commencing suit to enforce their claims within sixty days from the date of the registration of the deed as provided in section 685 of *The Code.* Hence,

2. The preference of one creditor by the confession of judgment by a corporation is not void as against other creditors.

3. The term "trust fund" as used in various decisions of the Courts in reference to the assets of a corporation, does not imply that, upon the insolvency of a corporation, its assets will be administered strictly as a trust for the benefit of all the creditors *pro rata*, but that, whenever proceedings under the statute are had and the Court takes charge of the assets through its receiver, it will make equitable distribution, among all the creditors, of all the assets not subject to prior liens or rights.

4. Although a confession of judgment does not contain words expressly authorizing the clerk to enter the same upon the records, yet if the record shows that the confession was sworn to and filed and judgment thereupon entered, the filing is equivalent to an express authority for its entry and sufficiently conforms to the statute.

5. A confession of judgment which states the amount for which the judgment is confessed, and states that the same is due by a certain promissory note due and payable on a day named, and that the consideration for the same was an article sold and delivered, sufficiently conforms to the statute, provided the statement is true, for then it follows that it is shown that the amount "is justly due."

6. The failure to file with the confession of judgment the note or other evidence of indebtedness does not invalidate the judgement, provided the confession contains a sufficient description of the nature of the indebtedness to enable a party to make inquiry and ascertain the truth of the matter.

BANK *v.* COTTON MILLS.

7. It is sufficient if a confession of judgment state concisely the facts out of which the indebtedness arose, and where such confession is for "goods sold and delivered;" it is sufficient, although the time of sale, quantity, price and value of the goods are not stated.

8. A confession of judgment for a greater rate of interest than the note or contract upon which it is based bears, will not, in the absence of fraud, invalidate the judgment.

9. Such irregularities in a confession of judgment as might be corrected by amendment in the case of ordinary judgments, may be the subject of amendment in a confession of judgment.

10. A stipulation in a confession of judgment that no execution shall issue thereon within a time specified is not such a reservation for the benefit of the debtor as impairs the rights of other creditors and does not vitiate the judgment.

This was a CIVIL ACTION in the nature of a general creditor's bill brought by the plaintiffs, The Merchants National Bank of Richmond and others, against the Newton Cotton Mills, alleging the insolvency of the defendant corporation, and asking for the appointment of a receiver and the distribution of its assets among its creditors. The action was commenced in October, 1893, and was brought to the February Term, 1894, at which time, no answer being filed by the defendant, M. L. McCorkle was appointed receiver to collect the choses in action of the corporation, and to sell the real and personal property, and was also appointed referee to take and state an account of the debts, liabilities and assets of the corporation and to determine the rights and privileges of the creditors in the distribution of the assets.

On the second day of April, 1894, the Potter and Atherton Machine Company and James E. Mitchell & Co., appeared in the action and made themselves parties thereto, and filed their complaint, to which complaint no answer has been filed.

In said complaint they alleged that the judgments confessed by the defendant to The Merchants National Bank of Richmond and others hereinafter mentioned were void, for

the reason that they were not confessed in conformity to the requirements of the statute, section 571 of *The Code*, and for the further reason that at the time of their confession and for some time prior thereto the defendant corporation was insolvent and had no right or power to prefer one creditor to another by confession of judgment or otherwise.

The referee proceeded to take the account as ordered by the Court, and filed his report at the July Term, 1894

At said Term the Potter and Atherton Machine Company and James E. Mitchell & Co. filed their exceptions as set forth in the record.

The referee held that certain judgments as set forth in the printed case were invalid, and to this ruling there was no exception before either the referee or the Judge.

The referee further held that the other judgments, in favor of the following persons, to wit, The Merchants National Bank of Richmond, The Bank of Lancaster, The Exchange Bank of Chester, The Bank of Orangeburg, The People's Bank of Winnsboro, Boyden & Overman, and J. R. Gaither, were valid.

James E. Mitchell & Co. and the Potter and Atherton Machine Company excepted to the ruling of the referee as to the validity of the last above enumerated judgments and attacked the same on the grounds set forth in their exceptions, which exceptions are substantially as follows:

*First.* That the said judgments were not confessed in conformity with the requirements of the statute, section 571 of *The Code*, in the following particulars:

(*a*) That there is no authority for entering the judgments stated in the confessions.

(*b*) That it is not shown in the confessions that the sums for which judgments are confessed are justly due or to become due.

(*c*) That the evidences of indebtedness or copies of the same were not filed with, attached to or described in the confessions.

(*d*) That the said judgments were confessed for goods sold and delivered, and the time of sale, quantity, price, value of the goods and the " exact consideration " of the indebtedness are not stated in the confessions.

(*e*) That said judgments, except that confessed to J. R. Gaither, were confessed for a greater rate of interest (to wit, 8 per cent.) than was allowed by the notes or contracts upon which the said judgments are alleged to have been based, which notes and contracts, when filed, not with the confessions but before the referee, showed that they carried only 6 per cent. interest.

(*f*) That plaintiffs in said judgments could not, after said judgments had been confessed and before the referee, after the hearing was begun, amend or change the same by filing the evidences of indebtedness, or resolutions or remitting interest or in any other respect or particular.

*Second.* That in the case of the three judgments confessed in favor of the Merchants National Bank of Richmond, The Exchange Bank of Chester, and The Bank of Lancaster, on July 31, 1893, the reservation by the debtor, with the consent and agreement of the plaintiffs in the judgments, that no execution should issue until after the expiration of nine months, was a benefit reserved by the debtor for his own ease and comfort to the impairment of the rights of the other creditors, and its then insolvent condition was a fraud upon their rights, and for this reason the referee and the Court should have held that the said judgments were void or at least, in the circumstances of this case, that they acquired no priority thereby.

*Third.* That the Newton Cotton Mills being utterly insolvent at the time the judgments were confessed, the referee should have held that it had no right or power to prefer one creditor to another by confession of judgment or otherwise, and that for this reason the said judgments are void.

Upon these exceptions the case came on to be heard at Fall Term, 1894, of CATAWBA Superior Court, before

BANK *v.* COTTON MILLS.

*Allen, J.,* who sustained the third exception, and held that the Newton Cotton•Mills, being insolvent at the time of the confession of the judgments, could not by the confessions prefer one or more of its creditors over others, and adjudged that after paying all costs, expenses and charges, and the debts of admitted priority, all of which are set forth and classified in the printed case, the remaining assets should be distributed *pro rata* among all the other creditors. The Judge further held that the judgments were not invalid by reason of the other grounds set forth in the foregoing exceptions; but he did not overrule the other exceptions, as he had sustained the third exception and set aside the judgments on that ground. The Merchants National Bank of Richmond and the other plaintiffs in the confessed judgments excepted to the ruling of the Judge invalidating their judgments.

And James E. Mitchell & Co. and the Potter and Atherton Machine Company, in order that they might not be prejudiced by the ruling of the Court upon the other grounds of objection to the said judgments, filed exceptions to his Honor's ruling in those respects, and they ask that those exceptions be considered only in case this Court should hold that the reason assigned by the Court below for setting aside the judgments is erroneous.

In order to present these questions the following brief statement of the facts relating to it, as gathered from the record, is pertinent:

" The Newton Cotton Mills was a manufacturing corporation, created and organized in 1883, and in the prosecution of its business became heavily involved in the spring and early summer of 1893, so much so that its indebtedness at that time amounted to about $60,000. On July 21, 1893, notes of the corporation for large amounts went to protest, the corporation not having, nor being able to raise, the money with which to pay them, and for some time prior to the date

of the confession of the first judgments the corporation was unable to pay its debts and was actually and hopelessly insolvent. Being thus insolvent the corporation, on the 31st day of July, 1893, confessed three judgments aggregating about $15,000 to The Merchants National Bank of Richmond, Va., The Bank of Lancaster and The Exchange Bank of Chester, S. C., on certain antecedent debts, in the form of notes which the said banks held against the corporation as endorsees and only one of which had become due. On the 11th of August, 1893, the corporation confessed other judgments to Boyden & Overman, J. R. Gaither and others to a large amount; and on August 14 and August 23, 1893, it confessed other judgments, among others to the appellants, The Peoples Bank of Winnsboro, The Exchange Bank of Chester, and The Bank of Orangeburg, S. C., the said judgments amounting in all to $50,000 or $60,000.

" The entire property of the corporation was sold on the 2d day of April, 1894, after extended advertisement, for the sum of $31,000, and the Court found that the property had sold for a fair price, and without objection confirmed the sale; and the property of the corporation was in better condition at the time of the sale than when the judgments were confessed. The property of the corporation, outside of that sold on the 2d of April, 1894, was not worth exceeding five hundred dollars."

*Messsrs. Jones & Tillett* and *L. L. Witherspoon,* for plaintiffs (appellants).

*Messrs. Walker & Cansler* and *W. P. Bynum, Jr.,* for Potter Machine Co., and Mitchell & Co., appellees.

MACRAE, J.: Let us examine first the case presented by the appeal as to the right of an insolvent corporation to make a preference. It is contended with great learning and research by the counsel for the appellees that when a corpo-

ration becomes insolvent, it is thenceforward unlawful for its directors to make any preference in the payment of its debts, but that all its property must be kept and administered for the common benefit of all its creditors, in the same manner as if the receiver had taken charge thereof under section 379 and 668 of *The Code.*

The late cases of *Hill* v. *Lumber Co.*, 113 N. C., 173, and *Foundry Co.* v. *Killian*, 99 N. C., 501, are cited as direct authority for such contention.

If it has been adjudged by this Court that such is the law, every consideration in favor of the stability of judicial decision demands, except in the face of manifest error, that we should abide by it.

This leads us to enquire what was decided in *Hill* v. *Lumber Co.* The question there was as to the validity of a preference made in favor of a director of an insolvent corporation. His duties and liabilities, as one occupying a fiduciary relation to the stockholders and creditors, were there discussed, and the language of the opinion delivered is to be understood in its application to the facts of that case. In the examination and decision of appeals we are confined to the questions at issue; whatever is written must be taken with reference to its environment, and that which, isolated, would be a broad proposition when considered in connection with the subject matter under discussion, may be and generally is restricted in its meaning. It is the tendency to give further effect than was intended to words used in reference to a particular state of facts, which sometimes confuses the interpretation of the law and makes that broader and more comprehensive, which in its application to the case at bar is simple and plain.

Could a director of an insolvent incorporation, who was also a creditor, take advantage of the means of information at his hands, and so protect himself to the injury of other creditors who were debarred from the same opportunities?

115—33

Herein was invoked the principles of equity, the relation of trust and confidence borne by the director to all the stockholders and extended in case of danger of loss to all the creditors, and the broad proposition, so often stated and so often explained in cases like the present, where it was thought to extend its meaning beyond the purposes for which it was used, was laid down that a director is a trustee, first for the stockholders and then for the creditors. The present question was in that case not necessary to be and was not decided, and if it had been in express terms decided, such decision would have been simply a dictum, binding no one further than in its application to the question then before the Court.

Understood as used and applied in *Hill* v. *Lumber Co.*, in case of the insolvency of a corporation, and as against the fiduciary in charge of its assets, those assets *are* a trust fund, and the general creditors are at least entitled to be secured out of the assets upon equal terms with the directors, who are also creditors.

But after diligent examination we find that by the laws of this State corporations have never been restrained from the exercise of preference in favor of creditors, not corporators, further than individual persons are, subject, of course, in both instances to the controlling principles of the statute of frauds that these preferences must not be made with a purpose to defeat, delay or hinder other creditors or parties in interest. We may here say that the expression used in *Hill* v. *Lumber Co.*, that creditors have a lien upon the assets, was a quotation from 2 Story Eq. Jurisprudence, section 1252, where the word *lien* is explained to mean simply a right of priority of payment in preference to any of the stockholders in the corporation.

The case of *Foundry Co.* v. *Killian*, 99 N. C., 501, presented one single question—the liability to creditors of corporations, of the stockholders thereof to the extent of their unpaid subscriptions, and the decision there was founded upon the prin-

ciple that the property, including the capital stock, paid and unpaid, constitutes a fund for the benefit of creditors, "that the capital stock of a corporation is a trust fund to be preserved for the benefit of corporate creditors."

Our laws provide for the appointment of a receiver of an insolvent corporation, or one in imminent danger of insolvency. This appointment is to be made on appplication of any creditor, stockholder or member of such corporation. *The Code,* § 668, as in Killian's case. And when the receiver shall have collected the assets he is required to pay all the debts if the funds shall be sufficient, and, if not sufficient, to distribute the same ratably among all the creditors who shall prove their claims. When once the Court of Equity, through its receiver, takes charge of the assets, they are to be distributed *pro rata* among the creditors, subject to such priorities as have already accrued.

It is provided in section 685 that corporations may convey by deed, but that such conveyance shall be void as to existing creditors, etc., provided proceedings to enforce such claims be commenced within sixty days after the registration of said deed. The converse of this provision is, if no creditor or party injured brings his action within sixty days his remedy fails and the conveyance is good. Thus, a conveyance by an insolvent corporation, not forbidden by the statute of frauds, is good unless some creditor or party injured objects within sixty days.

These corporations, creatures of the statute, artificial persons, under the direction of the Legislature, have all the rights and liabilities, generally speaking, of individual persons. Before the passage of the amendment to the act of 1798, we think by the act of 1872, now section 685 of *The Code,* a corporation might convey land, etc., by deed executed according to the statute or common law. The amendment added the provision that any such conveyance should be void as to pre-existing debts and torts, "provided such

creditors or persons injured shall commence proceedings, etc., within sixty days after the registration of said deed as required by law." The effect of this amendment is not to make void such deeds as against creditors and persons injured unless proceedings are begun in sixty days. This has been expressly decided in *Blalock* v. *Manufacturing Co.*, 110 N. C., 99, which was cited with approval in *Hill* v. *Lumber Co.*

This question, then, is settled in North Carolina against the contention of the appellees and the judgment of his Honor below.

The meaning of the words, " trust fund," as used in this connection, is to be explained, as it has been many times in other Courts, not strictly a trust to be administered in the first instance upon the insolvency of the corporation for the benefit of all the creditors *pro rata,* but whenever proceedings under the statute are had, and the Court takes charge of the assets through its receiver, it will make equitable distribution among all the creditors of all the assets not subject to prior liens or rights. Until such jurisdiction takes hold of the assets they are subject to the action of the individual creditors, and such preferences may be made by the corporation as a natural person might make under the same circumstances of insolvency.

The present exigency will not permit us to notice the many authorities adduced by the learned counsel in support of the contrary doctrine. We must content ourselves with a reference to the language used in *Hollers* v. *Brierfield,* 150 U. S., 371, in reference to the ordinary meaning of these words (trust fund) in the present connection : " While it is true language has been frequently used to the effect that the assets of a corporation are a trust fund held by the corporation for the benefit of oreditors, this has not been to convey the idea that there is a direct and express trust attached to the property. As said in 2 Pom. Eq. Jur., section 1046, they

are not in any true and complete sense trusts, and can only be called so by way of analogy or metaphor." After reviewing many cases in that Court where these words are used or explained, the Court proceeds: " A party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into its possession property burdened with a trust or lien. The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud or sometimes even mere mismanagement in respect thereto. As between itself and its creditors the corporation is simply a debtor and does not hold its property in trust or subject to a lien in their favor in any other sense than does an individual debtor. " The assets of such a corporation (an insolvent bank) are a fund for the payment of its debts. If they are held by the corporation itself, and so invested as to be subject to legal process, they may be levied on by such process." *Curram* v. *Arkansas*, 15 How., 304. The text-writers, while criticising the doctrine with singular unanimity, admit its existence. In 2 Morawitz on Private Corporations, section 802: " In the absence of statutory prohibition a corporation has the same power of making preferences amongst its creditors in the distribution of its assets as an individual." This is stated as collected from the repeated decisions of the Courts, although the author in the next section in giving his own views, strongly combats the principle. To the same effect is 2 Shelly on Corporations, section 99.

However unjust it may appear in principle, it seems to be settled by the decisions that a corporation may, prior to any interference with the conduct and management of its agents on account of its insolvency, and in the absence of different provisions in bankrupt or insolvent laws, give a preference in payment or security to one creditor or class of creditors over another." And 2 Waterman on Corporations, section 208: " A

corporation, unless restrained by its charter or by statute, has the same right to prefer one creditor to another in the distribution of its property as an individual, and it may execute a mortgage or give a lien which shall operate as a preference." The author, after admitting that this doctrine is recognized both at law and in equity, proceeds to question its justice.

Seeing, then, that it has already been settled in this State, and is recognized as the law by the Supreme Court of the United States, and admitted by the text-writers, we must declare that his Honor was in error in holding these preferences void as against the other creditors.

It is contended by Mitchell & Company and the Potter & Atherton Machine Company, appellees, that although they did not appeal from the judgment of the Court below, the judgments confessed in favor of the Merchants Bank of Richmond and others, were in conformity to the statute, sections 570, 571 and 572 of *The Code,* they are entitled to have their exceptions to this ruling considered here, in order that if this Court shall be of the opinion that for any reason the conclusion reached by his Honor that said judgment creditors are not entitled to preference or priority over other creditors, the judgment below ought to be affirmed. Conceding this last proposition, under the authority of *Bell* v. *Cunningham,* 81 N. C., 83, we proceed to consider the question whether said judgments were confessed in conformity to the statute.

We reproduce here a copy of the proceedings on the judgment confessed in favor of the Merchants Bank of Richmond, as all the others except one are substantially similar .

" $5,371.60.          NEWTON, N. C., March 16, 1893.

" Four months after date we, the Newton Cotton Mills, promise to pay to the order of Heath, Springs & Co., five thousand three hundred and seventy-one and sixty one-

hundredths dollars, at Mercantile National Bank, New York.
Value received.                    NEWTON COTTON MILLS,
" No. ----                By W. H. WILLIAMS, *President*.
    " Due July 16–19, 1893."

                " NORTH CAROLINA—Newton Township,
                    " CATAWBA COUNTY, July 31, 1893.

" At a meeting of the stockholders of the Newton Cotton
Mills, this day duly called, all the stock being represented at
such meeting, it was unanimously resolved that the Presi-
dent, W. H. Williams, be and he is hereby authorized to con-
fess judgment against the Newton Cotton Mills, and in favor
of The Merchants National bank of Richmond, Va., for the
sum of five thousand three hundred and seventy-one and
sixty one-hundredths dollars, for money due the said bank
by the corporation. Also, to confess judgment against the
corporation in favor of The Exchange Bank of Chester, S.
C., for the sum of forty-eight hundred and thirty-two and
thirty-eight one-hundredths dollars, for money due the said
bank by note made to Heath, Springs & Co , and endorsed
to it, which said note will become due August 4, 1893. Also,
to confess judgment against the corporation in favor of The
Bank of Lancaster, S. C., for the sum of forty-seven hundred
and fifty-six dollars and ten cents, due by the corporation to
said bank upon two notes made by it to Heath, Springs &
Co., the one to become due on August 20, 1893, for twenty-
four hundred ($2,400) dollars, and the other to become due
on August 27, 1893, for twenty-three hundred and fifty-six
and ten one-hundredths dollars, which said notes have been
endorsed to the said bank by Heath, Springs & Co. All of
the said judgments are authorized to be entered in the Supe-
rior Court of Catawba County, North Carolina.

    I certify that the foregoing is a full, true and perfect copy

of the resolution passed this day at a meeting of stockholders of the Newton Cotton Mills.

" W. H. WILLIAMS, *President,*
" G. A. WARLICK, *Secretary.*   Newton Cotton Mills."

" STATE OF NORTH CAROLINA—County of Catawba.
" *In the Superior Court.*
" THE MERCHANTS NATIONAL BANK OF RICHMOND, VA., *v.*
  THE NEWTON COTTON MILLS.

"The Newton Cotton Mills by W. H. Williams, President, being thereunto duly authorized by the Newton Cotton Mills, hereby confesses judgment in favor of The Merchants National Bank of Richmond, Va., the plaintiff above named, for the sum of five thousand three hundred and seventy-one dollars and sixty cents, with interest at 8 per cent. from July 19, 1893. This confession of judgment is to secure the plaintiff the sum above named, which is due by a certain promissory note made by the Newton Cotton Mills to the firm of Heath, Springs & Co., and the said Heath, Springs & Co. endorsed to the plaintiff for value, which said note became due and payable on the 19th day of July, 1893. That the consideration of this note was for cotton sold and delivered to the Newton Cotton Mills by Heath, Springs & Co.

" NEWTON COTTON MILLS,
" By W. H. WILLIAMS, *President.*"

" NORTH CAROLINA—Catawba County.

" Before me, J. F. Herman, Clerk of the Superior Court of Catawba County, personally appeared W. H. Williams, President of the Newton Cotton Mills, who, being duly sworn, maketh oath that the statement above signed by him is true.

W. H. WILLIAMS."

" Subscribed and sworn to before me July 31, 1893.

" J. F. HERMAN,
"*Clerk Superior Court.*"

" Upon filing the foregoing statement and confession, it is ordered and adjudged by the Court that the plaintiff, The Merchants National Bank of Richmond, Va., do recover of the defendant, The Newton Cotton Mills, the sum of five thousand three hundred and seventy-one dollars and sixty cents, with interest at 8 per cent. from July 19, 1893, and costs of action.   J. F. HERMAN,

"July 31, 1893.   *Clerk Superior Court.*"

" I agree that no execution issue on this judgment until after six months from date.   H. C. JONES,

" *Attorney for Plaintiff.*"

The first objection is, that there is no authority for entering the judgments stated in the confession. *The Code,* § 571, provides that " a statement in writing must be made, signed by the defendant and verified by his oath, to the following effect:

1. " It must state the amount for which judgment may be entered, *and authorize the entry of judgment therefor.*" It will be noted that there are no words in the confession expressly authorizing the Clerk to enter the same upon the records, but the record does show that the said confession was sworn to and filed, and judgment thereupon entered. The necessary result of the proceedings was to authorize the Clerk to enter the same upon the record. The filing with him could be for no other purpose, and we think that the confession itself, with the filing thereof, was express authority for its entry.

2. " That it is not shown in the confession that the sums for which judgments are confessed are justly due, or to become due." It will be observed that it states the amount for which the judgment is confessed, that the same is due by a certain promissory note described therein, which said note became due and payable on a day named, and that the consideration for the same was cotton sold and delivered. The requirement of the statute (the same section last named in subsec-

tion 2) is not that it shall *state*, but " and must *show* that
the sum confessed therefor is justly due, or to become due."
If the statement is true, it follows that it is shown to *be justly*
due.

3. " That the evidences of indebtedness, or copies of the same,
were not filed with, attached to or described in the confes-
sions." We do not understand that the failure to file the
specialty, when a judgment is rendered, has the effect to
invalidate the judgment. Frequently, in practice, when the
complaint is upon a promissory note, and there is an answer
filed admitting the debt, or where the complaint is verified
and no answer filed, judgment is entered and the attorney
permitted to bring in the note at a subsequent time. The
note is not strictly part of the record, though it should be
produced, that it may be cancelled when required. In this
respect there is no difference between a judgment rendered
*according to the ordinary course of the Court and one by*
confession. "Among the matters which are not (unless made
so by bills of exceptions, or by consent, or by order of Court)
matters of record, are all matters of evidence, written or oral,
including note, bond or mortgage filed in the case, and upon
which suit is brought." Freeman on Judgments, 79.

The note upon which the judgment is confessed is thus
described in the statement: "A certain promissory note
made by the Newton Cotton Mills to the firm of Heath,
Springs & Co., and the said Heath, Springs & Co. endorsed
to the plaintiff for value, which said note became due and
payable on the 19th day of July, 1893." We think this is
sufficient description to enable a party to make inquiry and
ascertain the truth of the matter. 2 Freeman, *supra*, 549.

4. " That the said judgments were confessed for goods sold
and delivered, and the time of the sale, quantity, price, value
of the goods and ' the exact consideration ' of the indebted-
ness are not stated in the confessions." It is required by the
statute that " it must state concisely the facts, out of which

BANK v. COTTON MILLS.

it arose,." Recently, in considering similar objections to a confessed judgment, to those now taken, where the affidavit stated that the amount was due "on a bond under seal for borrowed money, due and payable November 2, 1876," we held the statement sufficient. *Uzzle* v. *Vinson*, 111 N. C., 138. See also 1 Black on Judgments, 63.

5. "That said judgments, except that confessed to J. B. Gaither, were confessed for a greater rate of interest (to wit, eight per cent.) than was allowed by the notes or contracts upon which the said judgments are alleged to have been based, which notes and contracts when filed, not with the confessions, but before the referee, showed that they carried only six per cent. interest." It appears in the case that upon the hearing before the referee, these judgment creditors remitted all claim for interest over six per cent. The question is, whether the confession of judgment for a greater amount of interest than was justly due was rendered void thereby, or could the judgments stand for the true amount, interest at six instead of eight per cent. As we have indicated, the object of the statute in requiring a concise statement of the facts constituting the liability does not necessitate a full history of the whole transaction, does not require a bill of particulars, but does require such a statement as will enable one who desires to inquire into the transaction, to do so by reference to the statement made. It would not be contended that an ordinary judgment could be vacated for an overcharge of interest, unless the act was fraudulent. Here, by reference to the note which, if not filed with the confession, might be required to be produced by proper proceeding, it would at once be ascertained that the interest confessed was too great. The remedy would be the correction of the judgment to that extent, but unless fraud was shown it would not vitiate the judgment. *Hord* v. *Foster*, 11 S. W. Rep., 763; 2 Freeman on Judgments, 545, 549.

6. "That plaintiffs in said judgments could not, after said

judgments had been confessed, and, before the referee after the hearing was begun, amend or change the same by filing the evidences of indebtedness or resolutions, or remitting interest, or in any other respect or particular." If the proceeding were so defective in form and substance that it was void upon its face, no amendment could be made to give it life; but if there were irregularities which, in ordinary judgments might be cured by amendment, there is no reason why they could not be amended. 1 Freeman, *supra*, 66, 67. No liens had been acquired by the appellees by force of the filing of their complaint. Our statute, *The Code*, § 273, is liberal in the power granted the Court to allow amendments.

The next objection is that to the three judgments confessed in favor of The Merchants Bank of Richmond, The Exchange Bank of Chester and The Bank of Lancaster, the stipulation at the foot that no execution should issue in six months, was a benefit reserved by the debtor for his ease and comfort, to the impairment of the rights of other creditors, and, therefore, a fraud which vitiated these confessions.

The lien of the judgments began from the docketing of the same, as to the real estate of the judgment debtor. There is no requirement of law that a judgment creditor should at once proceed to have execution. There is no lien upon personal property, except from the levying. If there were any personal property to be subjected to the payment of the debts of the corporation, this stipulation was more for the benefit than to the detriment of other creditors. And the lien on real estate having been acquired by the docketing of the judgments, their rights could not be affected by the agreement on the part of the judgment creditors to a *cessat executio.*

What we have written disposes of all the exceptions except the additional one as to the Gaither judgment, that he was permitted to amend by appending an itemized statement of his open account, and this before any liens had been acquired by the appellees. This amendment it was in the power of

the Court to permit. 2 Freeman, *supra,* 554; 1 Black, *supra,* 66. These matters connected with confessions of judgments have been quite fully considered by this Court, and the rule laid down in *Davidson* v. *Alexander,* 84 N. C., 621, has been upheld, that the confession must contain a concise, verified statement of the facts, circumstances, business transactions and considerations out of which the indebtedness arose. What constitutes such a concise statement has been considered in *Davenport* v. *Leary,* 95 N. C., 203; *Nimocks* v. *Shingle Co.,* 110 N. C., 20, and in *Uzzle* v. *Vinson, supra.* ·

In Nimocks' case it was said: " Ordinarily, a corporation should act through its properly constituted board of directors, or its officers or agents duly authorized to do particular acts, such as confessing a judgment. That the officer or agent was authorized to have the judgment confessed, as directed, should appear to the clerk *in some way,* as by a properly authenticated certificate of the proceedings of the directors of the company, and this should be filed with the statement in writing of the claim upon which the judgment is founded. This *perhaps* would be the better course." In our last case, the affidavit set out the authority, but the authority itself, though presumably submitted to the Clerk when the judgment was confessed, was not filed until later. We are of the opinion that the failure to *file* the authority at the time of the confession, does not vitiate the judgment.

Having disposed of the exceptions of the appellees, as if the points had been made in an independent action to vacate for fraud or other cause making void the judgment, and not upon a motion to set aside for irregularities, it follows that in our opinion there was error in the judgment of his Honor that these judgments were void as to the other creditors, *for any reason.* The judgment will be modified so as to direct the satisfaction of these judgments, after the payment of the mechanics' and laborers' liens, except that of the Foster

Machine Company, instead of placing them in the class with all the unpreferred claims proved before the referee.

Modified.