## GRAHAM v. CARR.

(Filed May 6, 1902.)

1. CORPORATIONS—*Directors—Stockholders—Trustee—Sale.*

   A sale by a trustee of an insolvent corporation of bonds and capital stock belonging to it to one of its directors, is valid if made in good faith and for full value.

2. CORPORATIONS—*Payment of Debts—Directors.*

   A director of an insolvent corporation, being a surety for the payment of corporate debts, can not apply the proceeds derived from the sale to him of corporate property to the payment of such debts.

3. CORPORATIONS—*Payment of Debts —Directors —Creditors — Stockholders.*

   A director of an insolvent corporation, having signed a bond to indemnify a corporate creditor for the purpose of protecting the corporate property, may, from funds derived from the sale to him of corporate property, pay such creditor.

4. PLEADINGS—*Judgment—Corporations.*

   A complaint in an action by a receiver of an insolvent corporation against a director to recover corporate bonds and stocks sold to him, authorizes a money judgment equal to the corporate debts improperly paid by such director from the proceeds of such sale.

ACTION by Paul C. Graham, as receiver of the Golden Belt Hosiery Company, against J. S. Carr, and J. S. Manning, trustee, heard by Judge *Thos. J. Shaw,* at September Term, 1901, of the Superior Court of DURHAM County. From a judgment for the plaintiff, the defendants appealed.

*W. P. Bynum, Boone, Bryant & Biggs,* and *J. W. Graham,* for the plaintiff.

*Guthrie & Guthrie, H. A. Foushee,* and *Burwell, Walker & Cansler,* for the defendants.

FURCHES, C. J.   On the 13th day of December, 1895, a corporation was organized in the city of Durham with J. W. Smith, J. S. Carr, T. M. Gorman and W. A. Guthrie as stockholders, Smith and Carr holding the greater part of the stock—Smith holding $7,000 and Carr $6,000, Guthrie and Gorman holding $100 each.   These stockholders were incorporated under the name of the "Golden Belt Hosiery Company," and elected J. W. Smith President, and T. M. Gorman secretary and treasurer.   Smith continued to be its president for a time, when he resigned and Carr was elected.   It was not a financial success under the administration of either Smith or Carr, and in February, 1898, it was admitted to be insolvent and the mill shut down, and negotiations commenced to sell out to the "Durham Hosiery Mills."   At a meeting of the stockholders and directors of the Golden Belt Hosiery Company, on the 17th February, 1898, a sale was effected to the Durham Hosiery Mills, which company was to reorganize under the name of the "Durham Hosiery Company," and the Golden Belt Hosiery Company was to receive for its property, good will, etc., so sold, $20,000 of first-mortgage bonds to be issued by the new company, and $19,000 par value of stock in said new company.   The Golden Belt Hosiery Company having no other means of paying its large outstanding indebtedness, which was ascertained to be over $50,000, J. S. Manning was appointed a trustee, and this $20,000 in bonds and $19,000 of stock in the new company were put in his hands, and he was authorized and empowered to sell the same and apply the proceeds to the payment of the debts of the old company.   Manning, acting under this authority given him at the meeting on the 17th February, 1898, sold the defendant Carr $14,000 of these bonds in payment of a debt due the Bank of Durham to that amount—Carr and Smith were both liable as sureties for this debt.   But the Judge held this sale to have been properly made, and it is out of the case, as plaintiff did not appeal.

But the question remains as to the validity of the sale of the other $6,000 bonds and the $19,000 par value of the stock of the new company.  We have found that Manning, trustee, had the right to sell, and it is found as a fact that these sales to Carr were for a fair and full price; that the bonds were only worth par value at the time of the sale of them; and the stocks in the new company at the time they were sold were only worth fifty per cent of their par value; that these sales were fair, open and in *good faith*, and the money was paid and applied to the payment of the admitted indebtedness of the Golden Belt Hosiery Company.

Why this was not a valid sale that carried the property in these bonds and stocks to Carr, we are unable to see.  An insolvent party has a right to sell his property for a fair price, and he may sell to one creditor in preference to another,so it is done in good faith, and to pay an honest debt; or, he may sell his property and, out of the proceeds, pay one creditor in preference to anotehr, if the debt he pays is an honest debt; and so may an insolvent corporation; and its creditors have no right to complain, as they have no lien on the property of the corporation for the payment of their debts.  And the corporation in that respect stands on the same footing that an insolvent individual would have stood.  *Bank v. Cotton Mills*, 115 N. C., 507.

Suppose Manning had sold these bonds and stocks to John W. Fries, as he tried to do, for the same price he sold them to the defendant Carr; could it be contended that Fries would not have acquired a good title to them and they would not have been his property?  And if so, why did not the title pass to Carr, and these bonds and stocks become his property?  He had the same right to deal with the corporation (and certainly with Manning, its trustee) as any one else had, and if the transaction was fair, open, honest and without fraud, it was valid.  *Langston v. Imp. Co.*, 120 N. C., 132; *Howard*

*v. Warehouse Co.,* 123 N. C., 90; *Mfg. Co. v. Bradley,* 105
U. S., 175.

The trouble is not in these sales, which are found to have
been *bona fide* and without fraud, if there be trouble, but it
is in the application of the money received from these sales of
the $6,000 of mortgage bonds and the $19,000 of stock,
amounting to $10,612.93. The debts paid were all *bona fide*
debts due by the Golden Belt Hosiery Company, and the cor-
poration had no right to complain at their application, nor
did the stockholders, as stockholders, have any right to do so,
as they were entitled to nothing until all the debts of the cor-
poration were paid.

But creditors, whether they are stockholders or not, sustain
a different relation to the assets of the corporation and the
corporation sustains a different relation to them, and they
have rights, with regard to the payment of debts that stock-
holders as such do not have. As they have no lien on the
assets of the corporation for the payment of their debts, and
no right to have their debts preferred to those of other cred-
itors, nor to object to the payment of other creditors in prefer-
ence to the payment of their debts (if they are just debts),
if such payments are made in good faith and without fraud,
unless the debts so paid are due to a stockholder or officer of
the corporation. When this is the case, the law will not allow
the stockholders and officers of the corporation to take ad-
vantage of their knowledge of the insolvent condition of the
concern, and their power to *use and control the assets,* to pay
their own debts, or to relieve them from special liabilities to
the injury of other creditors. *Bank v. Cotton Mills,* 115 N.
C., 507; *Hill v. Lumber Co.,* 113 N. C., 173, 21 L. R. A.,
560, 37 Am. St. Rep., 621, as explained in *Bank v. Cotton
Mills, supra;* 5 Thompson on Corporations, Sec. 6503; 7
Thompson, Sec. 8497.

Neither was the Mitchell debt, the New Bern Bank debt,

nor the Mayo Needle Co. debt due to the defendant Carr, and
he seems not to have had any special interest in the payment
of the Mayo debt over that of any other creditor of the Golden
Belt Hosiery Company. The bond of indemnity he signed
was for the benefit of all of the stockholders and creditors, to
protect their common property. We therefore see no reason
why the defendant Carr should be held to an account for any-
thing because he signed that bond.

But as he was *specially* and personally liable for the Mitch-
ell debt and for the New Bern Bank debt, the law will not
allow him to retain the advantage he got in having the Mitch-
ell debt paid out of the proceeds arising from the sale of the
$6,000 mortgage bonds, nor the advantage he got by having
the application of a sufficient amount of the proceeds of the
sale of the stocks applied to pay the New Bern Bank debt, to
discharge it.

While these sales were valid and the title to the bonds and
stocks passed to him, the plaintiff, who represents the credi-
tors, should have judgment for the amount of the New Bern
Bank debt and the amount of the Mitchell debt, and the de-
fendant Carr will become a creditor, to these amounts, of the
Golden Belt Hosiery Company, and entitled to prove the
same and pro rate in the funds so collected, and any other
funds the receiver may have collected, as he will be as to any
other debt he has paid for the Golden Belt Hosiery Company,
or any other debt it may be due to him. And this will not
prevent him from claiming contribution against any co-
surety on any residue that may remain unpaid.

We have not considered all the exceptions, nor have we con-
sidered them in the order presented. We have not discussed
the positions taken by counsel as to the various meetings
stated to have been held by the directors at Carr's office,
though we have considered them. We do not think they were
such meetings as conferred any authority, but tended to show

good faith in the transaction. We do not think it necessary to rely upon them for authority to sell, and do not rely upon them. We derive the power in Manning to sell from the meeting on the 17th February, 1898. Nor have we felt called upon to consider the interesting and *novel* question presented by the defendant's exceptions and motion for a jury trial. The view we have taken of the case eliminated that question. It could have been of no benefit to the defendant.

The plaintiff's pleadings seem to be framed with a view to recovering the bonds and stocks mentioned. And while we hold he is not entitled to recover them, we think the facts stated entitle him to recover the price paid for them; and as he is in the right jurisdiction to recover that, as well as the bonds and stocks themselves, if he had been entitled to recover them, we direct judgment as above indicated.

Error.