THE PITTSBURG STEEL COMPANY v. DAVIDSON HARDWARE COMPANY ET AL.

(Filed 1 May, 1918.)

1. **Corporations—Insolvency—Officers—Trusts and Trustees—Preference— Distribution of Assets—Creditors.**

   Directors of corporations, especially when they are officers, and in active charge of the business, are considered to a certain extent as trustees in respect to their corporate management and business dealings with the corporate property, and in case of insolvency they will not be allowed to take advantage of their position to retain a preference for themselves at the expense of creditors or other shareholders, either in acquisition of rights or in relief from liabilities which they may have incurred either as principal or sureties.

2. **Same—Accounting—Fraud.**

   Directors and officers of an insolvent corporation who are active in the management of its business, and some of whom have become personally liable for the payment of some of its debts, may not take advantage of this relationship with its business to acquire a preference over the other creditors without committing a legal wrong; and those participating therein and at times in negligent default may be held to an accounting to the extent that such misconduct has caused pecuniary damages to the other creditors, whether the same amounts to fraud or the breach of a fiduciary relationship.

3. **Same—Sale of Assets—Vendor and Purchaser.**

   The president of an insolvent mercantile corporation was an endorser on one of its notes to a bank and also on another given to a different bank, of which he was president and shareholder. He and the secretary of the insolvent corporation, both directors and large owners of its shares, under authority conferred, sold its merchandise in bulk to another corporation and were given active charge of the disbursements of its assets among creditors. *Held*, it was a breach of the legal duty of both the president and secretary to pay the debts on which the former was liable in a greater proportion than the other debts of the concern, and to that extent they were both participants in the wrong and personally liable to an accounting. The fact that the insolvent corporation was a going concern at the time of the transactions in the sense that it was still doing business, does not affect the application of the principle.

4. **Same—Assumption of Debt—Substitution—Payment.**

   Where a corporation purchases the merchandise in bulk of another and insolvent corporation, and assumes the payment of an amount due by the latter to the bank with the consent of the bank, as part payment of the purchase price, and secures the debt thus due with a mortgage on its stock of good. *Held*, the effect of the transaction was to substitute the purchasing corporation as debtor to the bank in the place of the selling one, with the additional security of the deed in trust, and, as to the latter, amounted to a payment.

**5. Same—Application of Assets—Negligence—Default.**

> The officers of an insolvent corporation who have unlawfully obtained a larger per cent over the other creditors in the distribution of its assets, and those officers thereof participating in such wrongful act, are not relieved of an accounting to the other creditors of the corporation by reason of their having sold its merchandise in bulk to another corporation which was paid partly in cash and partly by assuming an indebtedness to a bank, secured by a mortgage on its merchandise, it appearing that such officers have become shareholders and connected with the purchasing corporation, and the bank has consented to its assuming the debt, for if such officers or the creditor bank permitted the assets to be wasted or misapplied by their own neglect or default, it should not be visited on the selling corporation or its creditors.

CIVIL ACTION, tried before *Harding, J.,* and a jury at November Term, 1917, of DAVIDSON.

The action was to recover of defendant Hardware Company the balance due on a debt for goods sold and delivered to said defendant company by plaintiff and chiefly to charge the individual defendants, Shemwell and Young, with a portion of said claim on the ground and to the extent that, being directors and officers in charge of defendant company's business, they had wrongfully diverted its assets for their own protection and benefit and to the prejudice of plaintiff's legal rights.

On denial of liability by said individual defendants, there was verdict for plaintiff to the amount against them for $377.04.

Judgment on the verdict and said defendants excepted and appealed.

*C. L. Shuping and Walser & Walser for plaintiff.*
*Roper & Roper for Shemwell and Young, appellants.*

HOKE, J.  It is the recognized position with us that the directors of corporations, and more especially when, as officers, they are in the active charge of the business, are to be considered to a certain extent as trustees in respect to their corporate management and their business dealings with the corporate property, and in case of insolvency they will not be allowed to take advantage of their position to obtain a preference for themselves at the expense of creditors or other shareholders, either in the acquisition of rights or. in relief from liabilities which they may have incurred either as principal or sureties.  *Wall v. Rothrock,* 171 N. C., 388; *Whitlock v. Alexander,* 160 N. C., 465, 479; *Pender v. Speight,* 159 N. C., 612; *McIver v. Hardware Co.,* 160 N. C., 478; *Graham v. Carr,* 130 N. C., 271; *Hill v. Lumber Co.,* 113 N. C., 173; *Townsend v. Williams,* 117 N. C., 330.

In the *Wall case, supra,* the general principle is well stated as follows: "But the directors, occupying a fiduciary relation, are not permitted to secure themselves against preëxisting liabilities of the corpora-

tion upon which they are already bound, or for money they may have already loaned, when the corporation is in declining circumstances and verging on insolvency. .They cannot be permitted to take advantage of their intimate knowledge of the corporation's affairs for their own benefit at the expense of the general creditors."

And in *Pender v. Speight*: "It is the duty of the directors of a corporation, as trustees of its property for the benefit of its creditors and shareholders, to administer the trust for the mutual benefit of the parties interested, and for them to receive therein an advantage to themselves not common to all is a plain breach of the trust imposed."

And, in illustration of the principle, it was held in *Graham v. Carr, supra,* "That a director of an insolvent corporation, being a surety for the payment of corporate debts, cannot apply the proceeds derived from a sale to him of corporate property to the payment of such debts." Again, in the second *Whitlock case:* "The directors were required to surrender a mortgage they had placed upon the corporate property and by means of which they had raised money to pay off corporate debts upon which they were sureties."

Whether the inhibition referred to is made to rest in strictness on the existence of a fiduciary relationship or on the ground of fraud, a position approved in some of the cases, Clark on Corporations, p. 608, it is very generally held in this country that a breach of duty in the respect suggested is properly considered a legal wrong, for which the officers participating, and at times when in negligent default, may be held to an accounting to the extent that their misconduct has caused pecuniary damage to other creditors. *McIver v. Hardware Co., supra.*

In the present case, there is evidence on the part of plaintiff and construed in reference to the charge, the jury, in their verdict have established that the defendant corporation was a company doing hardware business in Lexington, N. C., having a paid up capital of $15,000 or more and in which defendant Dermot Shemwell was president, one of the three directors, and stockholder to the amount of $4,500; that a second director, J. E. Foy, also held stock to the amount of $4,500, and the remainder of the said stock, to the amount of six or seven thousand dollars, was held by the third director, defendant B. C. Young, who was vice-president and secretary and treasurer of the company. That in May, 1913, finding they were in debt to various parties to an amount aggregating $30,000, the officers in charge, Shemwell and Young, under authority conferred, sold the stock of goods in bulk to a corporation known and styled the "Manning Hardware Company," for $21,000, of which $11,000 was paid in cash and the remainder was satisfied and paid by the Manning Company assuming the payment of $10,000 and giving a deed of trust on their entire stock to secure the same on a debt of

$15,000 then owed by defendant company to the Planter's National Bank of Richmond, Va., and on which the individual defendant Dermot Shemwell was an endorser. That this $21,000 paid, together with the sum of $1,500 collected on the accounts and aggregating $22,500, constituted the assets of defendant company, justifying a payment pro rata among the creditors of 75 cents on the dollar. That all claims against the defendant corporation had been paid except the balance due the Planters Bank, amounting to $5,000, a debt of $2,500 to the First National Bank of Lexington, of which Shemwell was president and a large stockholder, and which note also he had endorsed, and the debt due plaintiff company, originally amounting to $859.92, reduced by payments since the sale to $592.04. That out of the $11,000 cash received as purchase price there was paid on the balance of $5,000, due the Planters' Bank $2,500, making a total payment on the entire claim of $14,000 of $12,500, or 83 1-3 cents on the dollar. That the debt due the First National Bank of Lexington was reduced by payments to $1,100, making the payment on the claim of $1,400 equivalent to 56 per cent, and on the debt due plaintiff there had been payment aggregating $267.88, equivalent to 31 per cent.

It further appeared that the individual defendants Dermot Shemwell and B. C. Young were at that time in active charge of the affairs of defendant company and took personal part in directing the distribution of the assets and making the payment as specified, and on these facts as accepted by the jury and under the principles heretofore stated, we think that equality among all the creditors was the correct rule of distribution, and said defendants, in active management and control of the assets of an insolvent corporation, committed a breach of legal duty in paying 83 1-3 per cent on a debt of $15,000 in which defendant Shemwell was already obligated as endorser, and they have been properly charged with the sum required to bring the payments on plaintiff's claim to an amount equalling 75 cents on the dollar, the dividend that the assets justified.

It is objected for the appellants that the corporation being a going concern had the right to prefer and pay any creditor that they might select, and as a general proposition that is true, but on the facts of the record, where these appellants, as stated, were in charge of the assets of an insolvent corporation, they had no right to take advantage of their position and apply these assets to their own relief and benefit, to the detriment and injury of the general creditors and their doing so, as stated, constitutes an actionable wrong for which they have been properly held to account.

It is further contended that while this may be true as to defendant Shemwell, who was an endorser, it may not hold as to defendant Young,

who so far as appears received no pecuniary benefit. It is recognized as correct doctrine here and elsewhere that cotrustee is not always and necessarily chargeable with the default of a trustee unless, as in the case of coadministrators when they became so because of signing the same bond. Good faith and reasonable care and diligence is the usual and accepted rule of liability in such cases. *Fisher v. Fisher,* 170 N. C., 378; *In re Jones' Appeal,* 8 Watts & Sargent, 143, 64 (Pa.).

But in the present case both of these defendants were active participants in the wrong. Referring to the evidence of defendant B. C. Young, given by himself on the subject, he testified, among other things: "The stock was sold in bulk. I was one of the directors at the time. In the liquidation of the affairs of the Davidson Hardware Company, I assumed payment of the accounts, wrote most of the checks and verified correctness of accounts. The checks were submitted to Mr. Shemwell and sent out to various creditors. They were drawn on the order of the Davidson Hardware Company and issued by the authority of all of us."

On such facts, both have been properly held liable. *Birmingham v. Wilcox,* 120 Cal., 467; 2 Beach on Trusts, sec. 643.

It is further urged for appellants that there was evidence tending to show that the entire $10,000 assessed by the purchaser, was not in fact paid to the Planters' Bank, but only about $6,000, realized by a sale of the stock under the trustee some time after the purchase.

It might suffice in answer to this position to say that it seems to have been submitted by his Honor to the jury as one of defendant's contentions and repudiated by them and, in any event, it should not avail appellants on the record. It appears that goods to the value of $21,000, belonging to the hardware company, were sold and transferred to the purchaser, who assumed the payment of $10,000 to the Planters' Bank, evidently with the latter's consent, and a mortgage or deed of trust executed on the entire stock being ample security for the claim. The effect of the transaction was, in our opinion, to substitute the Manning Hardware Company, with the additional security of the deed of trust, as the debtor instead of the hardware company, and, as to the latter, amounted to a payment of the remainder of the purchase money, for which the defendants should account.

It, furthermore, appearing that Young immediately went into the Manning Company, and Shemwell and Foy soon thereafter became stockholders therein, and if they or the creditor, the Planters' Bank, permitted their assets to be wasted or misapplied by their own neglect or default, it should in no way be visited on the hardware company or its creditors.

In our opinion, on the facts in evidence as accepted by the jury and under the principles applicable, the cause has been fairly tried and the liability of appellants correctly determined.

No error.