J. NORWOOD WHITLEY, JR. AND SHIRLEY H. WHITLEY, PLAINTIFFS-APPELLANTS V. CAROLINA CLINIC, INC., A NORTH CAROLINA CORPORATION, ALBERT JENNETTE, M.D., JAMES GLOVER, M.D., JERRY C. WOODARD, M.D., ROBERT A. APPERT, M.D., HUITT E. MATTOX, M.D., AND JOHN A. KIRKLAND, M.D., DEFENDANTS-APPELLEES

No. 947SC616

(Filed 18 April 1995)

**1. Landlord and Tenant § 25 (NCI4th)— medical clinic— action for breach of lease—summary judgment**

The trial court erred by denying the plaintiff's motion for partial summary judgment in an action for breach of a lease at a medical clinic where it is undisputed that the Clinic ceased making payments on the lease.

**Am Jur 2d, Landlord and Tenant §§ 79 et seq.**

**2. Corporations § 96 (NCI4th)— medical clinic—nonpayment of lease—deferred compensation claims paid—balance sheet insolvency—no breach of fiduciary duty**

The individual defendants, shareholders and directors of a medical clinic, did not breach any fiduciary duty to plaintiffs, the landlord of the clinic, where payments were made to the individual defendants from the clinic's deferred compensation plan and the rent was not paid. The Clinic was solvent on a cash flow basis and was continuing to conduct its business in good faith at the time of the payments to the individual defendants. For a corporate director to breach a fiduciary duty to a creditor, the transaction at issue must occur under circumstances amounting to a "winding-up" or dissolution of the corporation; balance sheet insolvency, absent such circumstances, is insufficient to give rise to breach of a fiduciary duty to creditors of a corporation.

**Am Jur 2d, Corporations §§ 1689 et seq.**

Appeal by plaintiffs from summary judgment entered 8 April 1994 by Judge Frank R. Brown in Wilson County Superior Court. Heard in the Court of Appeals 28 February 1995.

WHITLEY v. CAROLINA CLINIC, INC.

[118 N.C. App. 523 (1995)]

*Wallace, Creech, Sarda & Zaytoun, by Peter J. Sarda and Richard P. Nordan, for plaintiffs-appellants.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by James D. Blount, Jr. and Kerry A. Shad, for defendants-appellees James Glover, M.D., Robert A. Appert, M.D., and John A. Kirkland, M.D.*

*Narron, Holdford, Babb, Harrison & Rhodes, by Henry C. Babb, Jr., for defendants-appellees Carolina Clinic, Inc., Albert Jennette, M.D., Jerry C. Woodard, M.D., and Huitt E. Mattox, M.D.*

WALKER, Judge.

Defendant Carolina Clinic, Inc. (the Clinic) was a large multi-specialty medical clinic located in Wilson, North Carolina. In October 1979, the plaintiffs leased to the Clinic certain real property located in Stantonsburg, North Carolina. The parties to the lease restated the lease in 1987, extending the term of the lease through 30 June 2007. From 1979 through July 1992, the property housed the Stantonsburg Clinic, a medical facility staffed and operated by the Clinic. During that time, the Clinic satisfied all terms and conditions of the lease and made each rental payment when it was due. In December 1991, the Clinic merged with its primary competitor, the Wilson Clinic. The two entities continued to provide medical services to the community under the name Wilson-Carolina Medical Center through July 1992.

The Clinic maintained a non-qualified deferred compensation plan whereby physicians could elect to defer a portion of their annual earned income for tax-saving purposes. These deferrals were made pursuant to a plan whereby the deferred income remained in the general funds of the Clinic and could be withdrawn later at a physician's election. A physician wishing to obtain his deferred compensation would request the Clinic's chief financial officer to issue a check. The individual defendants in this action are physicians who were employed by the Clinic and who were shareholders and directors of the Clinic. During 1989 and 1990, the Clinic paid a total of $1,433,943.77 in deferred compensation to the individual defendants.

Although the Clinic's audited balance sheets for the years 1989 and 1990 reflected that total liabilities exceeded total assets, the Clinic was always able to pay its financial obligations when they were due. In addition, the Clinic's chief financial officer attested that in

1990 and 1991 the Clinic reduced its indebtedness to its principal creditor, Branch Banking & Trust (BB&T), by two to three million dollars.

In July 1992, the Clinic ceased doing business and notified the plaintiffs that it would make no further payments on the lease. In August 1992, all assets of the Clinic were transferred to BB&T, the Clinic's only secured creditor.

On 8 September 1992, the plaintiffs filed suit against the Clinic seeking to recover damages for breach of lease. On 9 June 1993, the plaintiffs amended their complaint to include the individual defendants, alleging that while the Clinic was insolvent, the individual defendants, in their capacities as shareholders and directors of the Clinic, caused the Clinic to pay $1,433,943.77 in deferred compensation to the individual defendants. The complaint alleged that these payments constituted a breach of fiduciary duty owed to creditors of the Clinic, were in defraud of creditors, and violated statutory prohibitions against unlawful shareholder distributions. The Clinic answered the complaint, admitting the existence of the lease and the Clinic's failure to make payments after July 1992 because it was no longer in business. The individual defendants answered and admitted they received payments of deferred compensation but denied they took any action as directors or shareholders to cause these payments to be made. They also denied the Clinic was insolvent at the time of the payments. All defendants further alleged that the plaintiffs' complaint failed to state a claim for which relief could be granted.

On 27 January 1994, the Clinic and the individual defendants moved for summary judgment on all claims. Thereafter the plaintiffs moved for partial summary judgment on the issue of liability. The trial court granted summary judgment in favor of all defendants and denied the plaintiffs' motion for partial summary judgment.

[1] A party moving for summary judgment is entitled to such judgment if the party can show, through pleadings and affidavits, that there is no genuine issue of material fact requiring a trial and that the party is entitled to judgment as a matter of law. *Hagler v. Hagler*, 319 N.C. 287, 289, 354 S.E.2d 228, 231 (1987).

As to the plaintiffs' claim against the Clinic, the only issue before the trial court upon the plaintiffs' motion for partial summary judgment was whether the Clinic breached the lease. It is undisputed that the Clinic ceased making payments on the lease in July 1992, and the

Clinic has acknowledged that "it is liable to the Plaintiffs for some amount of damages arising out of the breach of lease." We therefore hold that the trial court erred by denying the plaintiffs' motion for partial summary judgment against the Clinic on the issue of liability, and we remand to the trial court for further proceedings.

[2] We next address the plaintiffs' claim against the individual defendants for breach of fiduciary duty (the plaintiffs have not raised the claims of fraud or statutory violations on appeal). The plaintiffs argue that the law of this state and other jurisdictions supports the proposition that even if directors have valid claims against the corporation, when the corporation is insolvent, it may not prefer the claims of its directors over its obligations to third party creditors. The plaintiffs claim that in this case, the record shows that while the Clinic was insolvent, the individual defendants caused the corporation to pay the obligations owed to them. The plaintiffs therefore contend that the individual defendants breached their fiduciary duty to creditors of the Clinic, including the plaintiffs, by using their positions as directors and shareholders of the Clinic to improperly prefer their own claims for deferred compensation over the plaintiffs' claim for rent.

As a general rule, directors of a corporation do not owe a fiduciary duty to creditors of the corporation. *See* N.C. Gen. Stat. § 55-8-30, North Carolina Commentary (expressing the opinion that "in general no such duty exists"). However, " 'directors of an insolvent corporation cannot as creditors of such corporation secure to themselves a preference. They must share ratably in the distribution of the company's assets.' " *Hill v. Lumber Co.*, 113 N.C. 173, 177, 18 S.E. 107, 108 (1893) (citation omitted). *See also Bassett v. Cooperage Co.*, 188 N.C. 511, 512-13, 125 S.E. 14-15 (1924); *Steel Co. v. Hardware Co.*, 175 N.C. 450, 451, 95 S.E. 896, 897 (1918); *Edwards v. Supply Co.*, 150 N.C. 171, 172, 63 S.E. 742, 742 (1909); Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 15.3, at 255 (4th ed. 1990) ("an insolvent corporation cannot in any way prefer the claims of its directors, officers or shareholders because they are not allowed to take advantage of their intimate knowledge of the corporate affairs or their position of trust to the detriment of other creditors"). The plaintiffs claim that the Clinic was insolvent at the time the individual defendants took the deferred compensation payments. They base their claim on the fact that the Clinic's audited balance sheets for 1989 and 1990 reflect liabilities in excess of assets and negative stockholders' equity of $5,014,967 and $3,890,841 respectively.

**WHITLEY v. CAROLINA CLINIC, INC.**

[118 N.C. App. 523 (1995)]

However, *Bassett* and other decisions of our Supreme Court cited by the plaintiffs establish that more than "balance sheet insolvency" is required in order to impose on directors a fiduciary duty to creditors. In *Bassett*, the plaintiff filed a lawsuit against the defendant corporation. One year later, and before the plaintiff recovered a judgment, the individual defendants (directors and officers) effected the sale of all corporate assets. *Bassett*, 188 N.C. at 512, 125 S.E. at 14. At the time of the sale, the corporation

> was practically insolvent, *the sale being made with a view of paying off its indebtedness and going out of business*, and the defendants, its officers and directors, in the management and control of its affairs, having received [the] purchase money, and with full knowledge or notice of plaintiff's claim, applied and distributed the entire purchase price to the payment and satisfaction of [the] company's existent indebtedness other than plaintiff's claim, and for the greater part of which said officers and directors were liable as endorsers on the company's notes.

*Id.* (emphasis added). Finding that the defendants could be liable for a proportionate part of the plaintiff's claim, the Court stated the following rule:

> [T]he corporation being insolvent or nearly so, this conveyance of its entire property *with a view of going out of business amounted practically to a dissolution*, and in such case the rule of distribution encumbent [sic] upon its directors and managers is that of equality among all of its creditors. . . .

*Id.* (emphasis added). *See also Steel Co., supra* (involving distribution of proceeds from *sale of all corporate assets*); *Graham v. Carr*, 130 N.C. 271, 41 S.E. 379 (1902) (sale of corporate assets and application of proceeds occurred when corporation was insolvent *and its operations "shut down"*); *Hill, supra* (defendant caused corporation to confess judgment in his favor *after the corporation had "fail[ed] of success and become[] insolvent"*).

In view of the foregoing case law, "insider preference liability might be limited to corporate liquidations and not be applicable to debt payments made in the ordinary course of business. . . ." Robinson, *supra*, § 14.8, at 247-48. Another authority has noted that in the context of insider preferences,

> a corporation is *not insolvent*, as a general rule, merely because it is embarrassed and cannot pay its debts as they become due, or

WHITLEY v. CAROLINA CLINIC, INC.

[118 N.C. App. 523 (1995)]

because its assets, if sold, would not bring enough to pay all its liabilities, *if it is still prosecuting its business in good faith, with a reasonable prospect and expectation of continuing to do so.*

15A William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 7472, at 273-74 (perm. ed. rev. vol. 1990) (emphasis added).

Other jurisdictions also recognize that liability for improper preferences cannot rest on balance sheet insolvency alone. For example, Texas courts have stated that in determining when a corporation is insolvent such that its directors owe a fiduciary duty to creditors,

"[i]t is not enough that its assets are insufficient to meet all its liabilities, if it be still prosecuting its line of business, with the prospect and expectation of doing so,—in other words, if it be, in good faith, what is sometimes called a 'going' business or establishment. Many successful corporate enterprises, it is believed, have passed through crises where their property and effects, if brought to present sale, would not have discharged all their liabilities in full. We feel safe in declaring that when a corporation's assets are insufficient for payment of its debts, and it has ceased to do business, or has taken, or is in the act of taking, a step which will practically incapacitate it for conducting the corporate enterprise with reasonable prospect of success, or its embarrassments are such that early suspension and failure must ensue, then such corporation must be pronounced insolvent."

*Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 629 (Tex. Civ. App. 1973) (*quoting Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co.*, 24 S.W. 16, 25 (Tex. 1893)). *See also McGivern v. Amasa Lumber Co.*, 252 N.W.2d 371, 378 (Wis. 1977) (recognizing that Wisconsin courts have "moved away from the concept of a director's fiduciary duty to creditors except perhaps where the corporation was insolvent *and no longer a going concern*") (emphasis added).

Thus, contrary to the plaintiffs' assertions, the law of this state, consistent with other authorities, establishes that for a corporate director to breach a fiduciary duty to a creditor, the transaction at issue must occur under circumstances amounting to a "winding-up" or dissolution of the corporation. Balance sheet insolvency, absent such circumstances, is insufficient to give rise to breach of a fiduciary duty to creditors of a corporation. This rule recognizes that many

modern-day corporations, while "balance sheet insolvent," are solvent on a cash flow basis and continuing to do business in good faith.

In this case, the facts show that at the time of the payments of deferred compensation to the individual defendants (the last of which occurred some eight months before the corporation ceased doing business) the Clinic was solvent on a cash flow basis in that it was meeting its obligations, including payment of the plaintiffs' lease, and had reduced its indebtedness to BB&T by two to three million dollars. In addition, there was no evidence that the Clinic was making plans to cease doing business in July 1992. Each individual defendant (except defendant Appert, who was dismissed) signed an affidavit stating that at the time of the payments, he had "no knowledge or thought" that the Clinic would cease doing business as a provider of medical services in July 1992.

Because the Clinic was solvent on a cash flow basis and was continuing to conduct its business in good faith at the time of the payments to the individual defendants, the individual defendants did not breach any fiduciary duty to the plaintiffs. Thus, an essential element of the plaintiffs' claim against them is missing, and the trial court did not err in granting summary judgment in favor of the individual defendants. *See Little v. Natl. Services Indus., Inc.*, 79 N.C. App. 688, 690, 340 S.E.2d 510, 512 (1986) (defending party entitled to summary judgment if he can show that claimant cannot prove existence of essential element of claim).

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Judges EAGLES and McGEE concur.