LAMBERTSON v. VANN.

(Filed December 18, 1903).

1. EXECUTORS AND ADMINISTRATORS—*Wills.*

Under the provision of the will set out in the opinion, the executor is authorized to carry on farming operations on land of testator during the settlement of the estate.

2. FINDINGS OF COURT—*References—Appeal.*

The findings of fact by a referee, adopted by the trial court, over objections, are conclusive on appeal.

3. EXECUTORS AND ADMINISTRATORS—*Wills.*

An executor, authorized to conduct farming operations on testator's land, is properly credited with amounts paid for the purchase of tenants' interest in certain crops bought for the purpose of protecting the interest of the devisees.

4. EXECUTORS AND ADMINISTRATORS—*Commissions—Improvements.*

An executor is entitled to commissions on an expenditure for the erection of permanent improvements on land belonging to testator's children necessary for the proper cultivation thereof.

5. EXECUTORS AND ADMINISTRATORS—*Wills.*

> An executor, having purchased certain personal property to be used on land of testator's children, which the executor was required to operate pending settlement of the estate, is entitled to credit for the purchase price thereof.

ACTION by Lucy B. Lambertson and others against Albert Vann, executor of the estate of W. A. Lambertson, heard by *Judge F. D. Winston* and a jury at Fall Term, 1901, of the Superior Court of NORTHAMPTON County. From a judgment for the plaintiffs the defendant appealed.

*Peebles & Harris,* for the plaintiffs.
*T. W. Mason* and *Gay & Midgett,* for the defendant.

CONNOR, J. This action is prosecuted by the widow and children of W. A. Lambertson, deceased, against the defendant as executor for the purpose of having a construction of the will and for other relief.

Lambertson died in March, 1888, leaving a last will and testament, in which he appointed the defendant Vann as his executor. The material parts of the will are as follows: In item 2 the testator directs that all the cotton now on the home farm and Clark place, and such other personal property as is not specially exempted from sale by the will, be sold and the proceeds applied in the due course of administration to the payment of the debts, and distribution afterwards as provided in said will. The testator directs that the horses and mules now on the House place where he lived should be kept on said farm and used in the same manner and for the same purposes as if he were living, said horses and mules not to be sold unless in the discretion of the executor it was deemed best for the children. He directs his executor to rent out the children's portion of the land from year to year, and manage the same

for the best interests of the children so long as he is engaged in carrying out the provisions of the will. He gives to his wife for and during the term of her life the house and all the out-buildings connected therewith on the home place, together with land enough to constitute one-third in value of his land, to be allotted as dower, and after her death he gives the said land to his children now born, or to be thereafter born, in fee. He gives to his children, Brownie A. and Willie V., all the remainder of the home tract and Clark place not assigned as dower to his wife; and to his afflicted sister, for life, all the interest that he owns in the home place of his father, and after her death to his children in fee. The residue of the property he gives to his wife and children in equal portions. The defendant duly qualified as executor and entered upon the discharge of his duties.

The cause was referred to Walter Daniel, Esquire, and he filed his report at Fall Term, 1897, of the Superior Court of Northampton County. Among other facts found by him are the following: That the defendant continued to act as executor until 1893, when a receiver was appointed and the defendant turned over to him the management of the estate and such personal property as was then on hand, for which he took the receipt of the receiver; that the defendant upon assuming the duties as executor made an agreement with the widow of the testator to carry on the farming operations upon the land belonging to the estate in the same manner that they had been carried on during the life of the testator, dividing the proceeds upon the basis of one-third to the widow and two-thirds for the benefit of the children; that the farm was operated under said agreement from 1888 to 1892, inclusive, at which time the widow and the executor put an end to the said arrangement, and the executor, during the year 1893, conducted the farming operations on the land belonging to the children in excess of the dower; and that between September

10, 1892, and February 25, 1893, the executor built on the land belonging to the children certain farm buildings and out-houses, for which he paid $496.04. The referee finds that this was a necessary expenditure and a permanent improvement and allows him credit for the same, but allows no commissions thereon. On December 28, 1892, the executor sold certain personal property, and bid in, for and on account of the children, certain articles to the amount of $690.74. The referee declined to allow him this amount, but does allow him the amount for which said property was afterwards sold by the receiver, to-wit, $454.88. The executor filed his annual account of the said estate and also of his farming operations, and the referee, from said account, states an account which is incorporated in his report. In his account the referee allows no commissions on certain items fully set forth in the report, nor does he allow interest on certain amounts or commission on amounts paid overseer, nor amount paid for board of overseer, nor on interest thereon.

Upon the facts found, the referee finds the following conclusions of law: That the executor was empowered under the will to conduct and carry on the farming operations; that the widow was entitled to one-third of the net profits of the said farming operations, and certain payments made to her in excess of said profits are charged against her distributive share of said estate, which is ascertained to be one-fourth thereof; that the amount which she owes the executor is not a lien on the estate in his hands belonging to the children; that the children are entitled to two-thirds of the net profits up to 1893, and to the whole of the profits for that year (1893), and to three-fourths of the estate in the hands of the executor. He thereupon proceeds to state an account of the dealings of the executor with the estate and of his farming operations, separating the receipts and disbursements from the two sources. He finds a balance due the estate, October

25, 1897, of $1,963.72. Of this amount Mrs. Lambertson is entitled to $490, leaving due the children $1,472.79. Of the latter amount he has paid $1,253.61, leaving a balance due the children, October 25, 1897, $219.18. From the operation of the farms he finds that there was a balance on hand of $1,429.86. Of this amount Mrs. Lambertson is entitled to one-third, $426.62, leaving due the children $953.24. This amount, with interest and sales of the crop for 1893, aggregates $2,040, from which he deducts disbursements and commissions amounting to $677.37, leaving a balance due the children of $1,312.83, of which amount he has paid to the receivers $783.13, leaving $527.70 due the children October 25, 1897. The two accounts aggregate an indebtedness to the children of $746.88. To the report the plaintiffs filed a very large number of exceptions, the second, eleventh and fifteenth of which were abandoned before his Honor, who proceeds to overrule the others from the first to seventy-first, inclusive. It is difficult to distinguish between those exceptions which point to conclusions of fact and those which point to conclusions of law. His Honor states that a large number of the exceptions are pointed to items based upon the contention that the executor was not authorized to cultivate the farms. His Honor adopted the conclusion of law as found by the referee, that under the provisions of the will the executor was authorized to carry on the farming operations, and we concur with his Honor's ruling in that respect. We think it clear from the terms of the will that the testator intended that his executor should carry on the farming operations and manage the same to the best interest of the hildren in the same manner and for the same purposes as if he were living. This is shown by the direction that the horses and mules on his farm were not to be sold unless in the discretion of the executor it was deemed best for the children. The exceptions to the referee's findings of fact, which are adopted by his Honor,

are conclusive upon this Court. We have carefully examined the accounts stated by the referee in the light of the testimony before him and we see no reason for disturbing his manner of stating the accounts. It is done with great care and intelligence.

The plaintiffs insist that the executor should not be credited with amounts paid out for the purchase of the tenants' interest in the crops. The referee makes no specific finding in respect to this matter. But it appears from his accounts that he has found as a fact that his dealings in that respect were correct. It is impossible for us to say from the accounts and testimony whether the purchase made by the executor of the tenants' interest in the crops operated as a loss to the estate. It would seem that the estate suffered no loss by reason of the course pursued by the executor. It appears that during the year 1889 the tenants threatened to abandon the crops and the executor found it necessary to take charge of them, and for that purpose bought the interest of the tenants. It is in evidence that the year 1889 was a bad crop year. One witness says: "Never knew a worse." And we cannot fail to take note of the fact, as a part of the history of the State, that the year 1889 was one of the most disastrous known among our farmers. It would hardly have been possible to have operated the farm without some loss, and it would have been impossible to have anticipated such disasters as came to the farming operations of the defendant and all other persons in Eastern North Carolina. It is difficult, looking backward, to adjust these accounts without danger of doing injustice to the parties. We see no reason for disturbing the conclusions to which the very intelligent referee has come in dealing with this matter. His Honor approved his findings of law and fact in that respect.

The referee found that the expenditure of $496.04 for building on the children's land two barns, nine stables and a

134——8

two-story frame house for the overseer, a hen-house and a tobacco house were necessary and a permanent improvement to the property. He allows the executor for these items, but declines to allow him commissions for this disbursement. The defendant excepted to this ruling and his Honor sustained the exception, allowing defendant commissions on the disbursement. We concur with his Honor's ruling in that respect.

The referee charged the defendant with the total amount of sales of personal property, made December 28, 1892, $694.74. This property was delivered to the receiver and sold by him in January, 1894, for $454.88. The referee credited the defendant with the amount for which the receiver sold the property, and to this the defendant excepted. His Honor sustained the exception and credited him with the amount at which he bought in the property. It seems that in January, 1892, when the widow and the executor put an end to the arrangement by which the lands were cultivated jointly, for the purpose of ascertaining the value of the widow's interest in the personal property, a sale thereof was made and the defendant bought it in for the children at $694.74, this property consisting of horses and mules, farming implements, forage, etc., necessary for the cultivation of the farms. The same property was delivered to the receiver, except that part which had been consumed in the use. We concur with his Honor's ruling in that respect. We can see no reason why the executor should suffer loss for the depreciation. We therefore adopt his Honor's ruling.

His Honor also sustained certain exceptions to the report of the referee in regard to commissions upon some small amounts, and we see no reason for disturbing his ruling in that respect.

The other exceptions of the defendant were overruled. A large number of the exceptions filed by the plaintiff are to

conclusions of fact, and, having been overruled by his Honor, are conclusive upon us.

This litigation began in 1893. It would seem that it is to the interest of all the parties that it come to an end. We have a record on the plaintiffs' appeal of one hundred and sixty-five pages and on the defendant's appeal of one hundred and twenty pages, a large part of which is repetition. We have eighty-six exceptions addressed to items ranging from thirty cents to $500. We have the assignments of error on the part of the plaintiffs, making no distinction between exceptions to matters of law and matters of fact. We have endeavored, with a great deal of labor, to carefully examine the question in controversy. We see no reason for disturbing the conclusions to which his Honor came. His Honor states that "by consent of both plaintiffs and defendant the Court took the papers in this case to consider the same, and this judgment is rendered out of term by consent of all the parties." It is evident that his Honor gave it a careful consideration, and we see no reason for disturbing his conclusions. We think that upon the plaintiffs' appeal the judgment should be affirmed.

Affirmed.

#### DEFENDANT'S APPEAL.

The defendant in this case filed a number of exceptions, his Honor sustaining a portion of them and overruling the balance. We have carefully examined the record and we find no error in the action of the Court in respect to the defendant's exceptions. The judgment upon the defendant's appeal must be affirmed.

We cannot refrain from saying that a volume of much smaller size and more clearness of statement would have enabled us to give the case a much more satisfactory investigation with much less cost to the parties.

Affirmed.