P. C. WHITLOCK AND W. S. O'B. ROBINSON, RECEIVERS, V.
W. S. ALEXANDER ET AL.

(Filed 20 November, 1912.)

1. Corporations — Insolvency — Directors—Advantage—Debtor and Creditor—Trusts and Trustees—Notes—Indorsers—Payment—Collateral Bonds.

The principle that the directors of a corporation stand in a fiduciary relation to it, and may not, in case of its insolvency, hold to themselves a preference or advantage obtained or attempted over other creditors or more meritorious claimants, does not apply to instances where the directors had been indorsers on the corporation note to a bank, which had become insistent for payment, and the defendant directors issued bonds secured by mortgage on the corporation's assets, purchased them, and with the bonds as collateral to their individual note, obtained the money and with it satisfied the corporation's note on which they had been indorsers, under an agreement to that effect with the bank.

2. Same—Repudiation—Advantage.

When the note of an insolvent corporation has been paid by its directors, who had indorsed it, by giving their personal note to the bank with bonds secured by a mortgage on the corporate assets, issued to take up the corporation's note, and which they had by agreement bought for the purpose, under a pressing demand of the bank for payment, the corporation or its receivers will not be allowed to accept the proceeds of the transaction and repudiate the stipulation attaching to it.

3. Corporations—Insolvent—Directors—Debtor and Creditor—General Assets—Mortgage—Equity—Cancellation.

The directors of an insolvent corporation having issued bonds secured by a mortgage on its assets to take up the corporate note on which they were indorsers, and having bought the bonds and

given their personal note with the bonds as collateral, and taken up the old note, for the payment of which the creditor was pressing: it is *Held*, (1) that the moneys received from the sale of the bonds to the directors were never general assets of the corporation, and, in the absence of bad faith, could not be recovered by the corporation; (2) that the only relief the corporation is entitled to is the cancellation of the mortgage; (3) the directors are general creditors of the corporation according to the amount of their respective claims.

APPEAL by defendant from *Daniels, J.*, at July Term, 1912, of MECKLENBURG.

Civil action. On the verdict the court entered judgment as follows:

"This cause coming on to be heard, and the jury having found the issues submitted to them as appears by the record, it is now, on motion of the counsel for the plaintiffs and upon the facts so found by the jury, ordered and adjudged that the plaintiffs, as receivers of the Carolina Ice Machine Company, do recover of the defendants above named the sum of $15,000, with interest on same from 11 August, 1910, and the costs of the action to be taxed by the clerk. It is further ordered, by consent of the counsel for the respective parties, that no execution shall issue on this judgment until by the taking of an account it shall be ascertained to what credit or credits the defendants may be entitled to on account of dividends due to them out of the estate of the insolvent corporation on account of claims due to them as creditors thereof, unless the court for cause shown and upon motion of plaintiffs' counsel shall order execution to issue."

Defendants excepted and appealed, assigning for error that on the facts admitted and established by the verdict the judgment should be so modified as to relieve defendants from payment of the $15,000, and declaring their right to share pro rata in the company's assets.

*Burwell & Cansler and Tillett & Guthrie for plaintiff.*
*Maxwell & Keerans, F. I. Osborne, and Bell & Pharr for defendants.*

HOKE, J.   The action was brought by plaintiffs, receivers of the Carolina Ice Machine Company, against defendants, directors of said company, to recover of them the sum of $15,000 as the proceeds of the sale of that amount of bonds of the company which the directors had applied to the payment of the company's notes amounting to $15,000, upon which said defendants were indorsers, the corporation at the time of the transaction being insolvent, and defendants knowing or presumed to know of such insolvency.   There were statements in the pleadings and evidence tending to show that on or about July, 1910, the defendant company was indebted to the Commercial Bank in a large amount, $15,000 of which was evidenced by demand notes of the company, on which the defendants were indorsers; that the directors, with a view of raising money to meet the present demands upon the company, determined to issue bonds of the corporation and secure the same by mortgage on its assets; that the bank becoming insistent on payment or further security for its claims, under an arrangement with the managing officers of the company, the defendants agreed to buy $15,000 of these bonds, the proceeds to be applied to the payment of the demand notes of the bank on which said defendant directors were indorsers; that pursuant to this arrangement, $15,000 of bonds, secured by a mortgage on the company's assets, were issued and sold to defendants, who made their note to the bank for $15,000, depositing the bonds as collateral, and with the money so obtained the demand notes, on which the defendants were indorsers, was taken up and satisfied.   Liability having been denied, issues were submitted and responded to by the jury as follows:

1. Did the Carolina Ice Machine Company, on or about 11 August, 1910, sell $15,000 of the bonds of the company described in the complaint at par, as alleged in the complaint? A. Yes.

2. Did said defendants, as officers and directors of said corporation, thereupon apply the proceeds of said sale, or any part thereof, to the payment of an indebtedness of the Carolina Ice Machine Company to the Commercial National Bank, amounting to about $15,000, upon which said directors were indorsers or sureties?   A. Yes; $15,000.

160—31

3. Did the directors, the defendants, pay the money for the bonds under an agreement that money so paid should be applied for the payment of the notes for $15,000 upon which they were indorsers? A. Yes.

4. Was the Carolina Ice Machine Company, at the time of the payment of said indebtedness to said bank, insolvent? A. Yes.

5. If so, was such insolvency known to the defendants? A. Yes.

6. In what amount are the defendants indebted to the plaintiffs on account of the said application of the proceeds of the said bonds? A. $15,000, with interest from 11 August, 1911.

The answer to the sixth issue being made by the court as a legal conclusion from the verdict on the other issues.

The decisions of this Court have been uniformly insistent on the position "that the directors of these corporate bodies shall be considered as trustees in respect to their corporate management and their business dealings with the corporate property," and applying the principle, it has been frequently held that in case of insolvency, their officers shall not be allowed to secure or hold a preference or advantage obtained or attempted over other creditors or more meritorious claimants. *Pender v. Speight,* 159 N. C., 612; *McIver v. Hardware Co.,* 144 N. C., 478; *Graham v. Carr,* 130 N. C., 271; *Bank v. Cotton Mills,* 115 N. C., 507; *Hill v. Lumber Co.,* 113 N. C., 173.

While giving full adherence to this salutary doctrine, we are of opinion that the facts do not bring the plaintiffs' present claim within the principle; for it proceeds and is dependent upon the erroneous position that the $15,000 arising from the sale of these bonds became assets of the company, subject to general distribution, whereas all the evidence tends to show, and the crucial fact is established by the verdict of the jury on the third issue, "That this money was paid by these defendants under an agreement that the money so paid should be applied on the payment of the notes for $15,000, upon which the defendants were indorsers."

In such case, it is well recognized that the company or its present representatives will not be allowed to accept the pro-

ceeds of the transaction and repudiate the stipulation attaching to it. *Bank v. Justice,* 157 N. C., 373; *Sprunt v. May,* 156 N. C., 388.

It thus appears that the money obtained by the sale of the bonds in question never became the general assets of the corporation, but was procured and advanced by these defendants for the express and only purpose of taking up the notes, upon which they were already indorsers. In *Graham v. Carr, supra,* a case more particularly relied upon by plaintiffs, there was an outright purchase of corporate property by a director of the company, and the proceeds of the sale undoubtedly constituted general assets and were properly so treated; but in our case, as stated, the money was advanced for the specific purpose as indicated and was never held by the corporation for general purposes. The only change wrought by this transaction in defendant's position is that whereas before they were indorsers of the company's notes and on payment thereof would have become general creditors, they are now, as holders of these bonds, creditors to the same amount, secured by a mortgage on the company's property. There is nothing whatever to indicate bad faith on the part of the defendants. Not a dollar of the company's general assets has been withdrawn or appropriated by them. They stand just as they would have done, except for mortgage referred to, giving them a lien on the corporation assets. Under the principle heretofore stated, this advantage must be surrendered, and, in our opinion, on the facts established, this is the extent of the relief to which plaintiffs are entitled. The verdict on the sixth issue and the judgment for $15,000 will therefore be set aside and judgment entered that the mortgage on the company's property be surrendered and canceled and defendants declared general creditors of the company according to the amount of their respective claims.

Error.