M. H. CALDWELL, RECEIVER FOR THE FRANKLIN PARK IMPROVEMENT COMPANY v. C. H. ROBINSON, F. J. ROBINSON, A. J. HILT, T. W. WHITMIRE, AND G. A. SMITH.

(Filed 5 May, 1920.)

**1. Appeal and Error—Reference—Findings—Evidence—Transcript.**

When the evidence upon which a referee has based his findings of fact do not appear in the transcript of the case on appeal, the Supreme Court will not review such findings, and they will be sustained.

**2. Reference—Evidence—Courts—Findings.**

The trial judge may reverse the findings of fact of a referee upon evidence supporting his ruling as to essential facts, and affirm him as to others.

**3. Corporations— Officers— Transaction— Evidence—References—Courts —Findings.**

The purchasers of land formed a corporation among themselves, to which the land was conveyed at double the price they paid for it, and under reference the evidence tended to show that at the time the individual purchasers *bona fide believed*, upon the opinion of disinterested persons of good character, after due inquiry and inspection of the property, that it was reasonably worth, on the market, the price at which the corporation became the purchaser; and it appeared that there were then no creditors of the corporation. Upon a reference it was found by the referee that the defendants, the individual purchasers of the land, had knowingly and fraudulently overvalued the lands they had conveyed to the corporation, and were liable for their unpaid subscription to its stock, including certain of its notes it had given to the incorporators in part payment for the lands: *Held*, there was evidence sufficient to sustain the trial judge in setting aside this finding of the referee, and finding that

the defendants believed the price to be a fair and reasonable one, and rendering judgment for defendants; and the exception that the judge had set aside the referee's finding without substituting one in its place, is untenable.

**4. Same—Fraud.**

There is no element of fraud in a transaction where the incorporators have *bona fide* sold lands to a corporation formed by themselves, at an advanced price, but at a reasonable valuation, believing it to be such, and there were no creditors of the corporation or other stockholders at the time. The principle that the directors and officers may not take advantage of the creditors of the corporation by their secret or superior knowledge of its affairs, does not apply to the facts of this case.

**5. Same—Judgments—Estoppel—Liens.**

Where the incorporators have sold to a corporation they have created their lands at an advanced but reasonable price, without fraud or collusion between themselves, and have taken the notes of the corporation in part payment, and later obtained judgments against the corporation thereon, the remedy was by appeal, if the judgments were erroneous, or if irregular, by motion to set them aside, or if void, as fraudulent, or for any other reason, by proper proceedings to attack them; but the judgments standing unimpeached are prior liens on the lands within the county where they are docketed, as against the rights of subsequent creditors.

**6. Corporations — Officers — Transactions — Mortgages— Subrogation— Equity.**

Where the incorporators have *bona fide* sold to a corporation they had formed, and in which they were the only shareholders, their lands at an advanced but reasonable valuation without fraud or collusion, and when the corporation owed no debts, and have personally assumed a mortgage of the corporation on the land, and have paid the same, they are subrogated to rights of the mortgage creditors in the lien under the mortgage.

CIVIL ACTION, tried before *Harding, J.,* at April Term, 1919, of CABARRUS, upon exceptions to referee's report.

In January, 1909, the Franklin Improvement Company owned the Franklin Hotel, with the lot on which it was built, containing 3½ acres, with other buildings thereon, and about 75 acres of adjoining land, situated in or near the town of Brevard, Transylvania County. On 7 January, 1909, the defendants purchased said real property, and the furniture in the hotel, at the price of $35,000, through the defendant, T. W. Whitmire, acting as their agent, he having been instructed to negotiate for a purchase of the property at the lowest price, which was found to be $35,000. The defendants agreed to take the property at that price, "after having carefully inspected the same, and after being advised by reliable persons that it was worth more than twice that much," or as much as $77,000, and at the time they bought the property they believed that their grantor was selling it at a great sacrifice on account of its

then financial condition, and they further believed, after making proper inquiry, that it was worth more than twice the amount they were to give for it, and as much as $77,000. The Franklin Improvement Company conveyed the property to the defendants on the day aforesaid for the price agreed upon, consisting of $12,000 in cash, and the assumption by the defendants of an outstanding mortgage on the property to secure a debt of the improvement company amounting to $17,500, making $30,-000, the remaining $5,000 having been paid by an arrangement between T. W. Whitmire and the improvement company. "That T. W. Whit-mire failed to pay his part of the purchase money, or $5,000 (except as above indicated), but the other defendants, C. H. Robinson, F. J. Robin-son, G. A. Smith, and A. J. Hilt did not know this at the time, and in good faith believed that defendants were paying the full amount of $35,000 for the property, as stipulated, instead of $30,000, as they later ascertained. A corporation was then formed by the defendants, who were its officers and directors and stockholders, under the name of "The Franklin Park Improvement Company," and the defendants conveyed all of the property to it at the price of $77,000, receiving in payment of the purchase money $35,000 of its stock at its par value, $24,500 of its notes, and the company assuming the payment of the debt of $17,500 secured by the mortgage on all its property. The latter debt was after-wards taken up, the defendants advancing for the company the sum of $6,000 contributed by them severally, and in different amounts, for which the company afterwards gave its notes to them, and the balance of $8,000 was borrowed by the company, and a deed of trust executed to Mr. Julius C. Martin, with power of sale to secure the same on the hotel, and 14 acres of the land. The $6,000 was entered on the books of the company as money advanced by the respective defendants to pay off the $17,500 debt secured by the mortgage on all of the property, on which certain payments had before been made, thereby reducing the amount of the same. The company paid the original purchase money notes from the sale of lots, and defendants reduced their notes for the $6,000 to judgment, to which were afterwards applied, in payment thereof, the proceeds of the sale of the hotel and the 14 acres of land, which were not required to pay the secured debt under the deed of trust to Mr. Martin. These transactions took place before the alleged claim of Gilmer & Moore, mentioned below, accrued, there being no creditors of the company at the time except the defendants, who were then solely interested in the same.

The claim of Gilmer & Moore arose out of a contract, by which the company leased the hotel and its furniture on 29 March, 1912, to them, with an option to buy the same, which they alleged was breached by a sale of the property, on 4 or 12 November, 1912, by Mr. J. C. Martin,

as trustee, and they contend that they became creditors of the company on that day. The defendants, on the contrary, contend that they did not become creditors until their claim was reduced to judgment in 1915. The lease and option contract were guaranteed by C. H. Robinson and G. A. Smith, as Moore and Gilmer alleged, and the judgment in favor of the latter was obtained in a suit against the company and the guarantors, the facts and results of which will appear by reference to the case of *Gilmer & Moore v. Franklin Park Improvement Company,* reported in 170 N. C., at p. 452.

The case was referred, it seems, by consent, and the referee made his report to the court in which he found, as a fact, among other things, that the defendants had knowingly and fraudulently overvalued the real estate conveyed to the company by them in payment of their stock subscription and bonds, and he held that they were liable to the company for said subscriptions as unpaid, and, therefore, to the plaintiffs as its receiver, for the payment of the Gilmer & Moore judgment, and for the cost. When the case was heard by Judge Harding, he reversed the findings of the referee, and found that the property sold to the company by the defendants was not knowingly and fraudulently overvalued, but that $77,000 was believed to be a fair and reasonable price therefor, and after making other findings, not material to be here stated, he gave judgment for defendants, and plaintiff, after filing exceptions, appealed to this Court.

*H. S. Williams and R. D. Gilmer for plaintiff.*
*Thaddeus A. Adams, L. T. Hartsell and Cansler & Cansler for defendants.*

WALKER, J., after stating the case: The testimony, upon which Judge Harding based his findings of fact, is not in the transcript, and we must therefore assume that there was sufficient evidence to support them, and this being so, they must be sustained, as we do not review findings of facts in such a case. *Dorsey v. Mining Co.,* 177 N. C., 60, and cases cited; *Thompson v. Smith,* 156 N. C., 345. It was said in *Thompson v. Smith, supra:* "If there is any evidence to support the findings, and no error has been committed in receiving or rejecting testimony, and no other question of law is raised with respect to the findings, we accept what the judge has found as final, as we do in the case of a jury," citing *Malloy v. Cotton Mills,* 132 N. C., 432; *Lambertson v. Vann,* 134 N. C., 108; Clark's Code (3 ed.), p. 564, and cases there collected; *Ramsey v. Browder,* 136 N. C., 251, *Comrs. v. Packing Co.,* 135 N. C., 62. The judge acted within his power when he reversed the referee as to the essential facts, although he may have affirmed him in some unimportant re-

spect. *Dumas v. Morrison,* 175 N. C., 431; *Cummings v. Swepson,* 124 N. C., 579; *Miller v. Groome,* 109 N. C., 148; *Highland v. Ice Co.,* 84 S. E. 252. The second exception is untenable because, though the judge set aside the referee's findings as to there being no consideration for the $24,000 of bonds issued by the company to the defendants, he did not fail, as alleged in the exception, to substitute a finding in its place, as he had already found that the property conveyed to the company by the defendants was not sold to it knowingly and fraudulently at an overvaluation, but *bona fide,* and honestly, the defendants believing at the time, after carefully inspecting the property, and after having made due inquiries as to its true value, that "it was reasonably worth, on the market, the sum of $77,000, this having been the testimony of disinterested witnesses, admitted to be of good character, that it was worth, at that time, all of that amount, and that no witness testified to the contrary."

The emphatic language of the judge leads us to interpret the findings to mean that the property was fully worth what the defendants charged the company for it, and that they honestly and in good faith believed that it was of that value. But if that was not its real value, it has certainly been found as a fact by the judge, taking any reasonable view of his language, that they honestly, and in good faith, believed it to be its real value, and there is no evidence before us to the contrary, nor is there any to show that $77,000 was not its true value. If it was the full value, we do not perceive how there could have been any fraud or misconduct in the transaction to the prejudice of creditors. It is a fact that, when the sale to the company was made, it had no creditors, except the defendants themselves. But the prominent and controlling fact is that they sold the property to the company at a fair and reasonable value, or to put it another way, the company bought it at its true value, and, therefore, got full value for its bonds and stock, the par value of which was $59,500. Judgments were recovered upon the bonds, which were duly docketed in the Superior Court of Transylvania County, thereby becoming liens upon the real property of the company. The judge refused to set aside the judgments as collusive or fraudulent, and we must again assume that there was evidence to support his ruling, as the testimony is not all before us, and the appellant must show error. Besides, it appears, as we have before stated, that the company owed the debts upon which the judgments were taken, and had no valid defense to the action in which they were rendered, and it does not appear that they were unfairly obtained for the purpose of cheating or defrauding the company, or taking any undue advantage of it. If these judgments were erroneous, the remedy was by an appeal; if irregular, by motion to set them aside; if void, as fraudulent, or for any other reason, they could be avoided by proper proceedings. But we do not think the assignments

of error sufficiently raise the question as to their fraudulency, or invalidity, though they do as to the right to docket them in Transylvania County. If they were valid, we do not see why they could not be docketed, under the statute, in that county. The whole case, upon its real merits, rests upon the finding of the judge that the sale of the land and other property by the defendants to the company was not fraudulent, but that the land and other property brought their value, and that the stock and bonds of the company given in payment of the purchase money were, therefore, fully paid for. If this be so, the judgments having been docketed in the county where the land is situated, constituted a lien upon it some time before Moore & Gilmer became creditors of the company. It is contended by the plaintiff that the dealings between the officers and the company were intended as a method for cheating and defrauding creditors, but the court has found against this charge, and there really is no evidence before us to sustain it. At the time of the transactions, there were no creditors to be defrauded except those who were parties thereto, and it could not be said that they intended to cheat themselves, and it is not shown that there was any actual intent to defraud subsequent creditors, or any proof from which such an intent can be inferred. The judge's findings conclusively refute the allegation of fraud.

The doctrine of this Court, and of all others, we believe, is restated in *Wall v. Rothrock,* 171 N. C., 388, 391, as follows: "There is no doubt that a board of directors, unless restricted by charter, may borrow money for the present needs of the corporation, and authorize certain directors to indorse the notes and secure them by mortgage on the corporate property, if done in good faith. . . . There is nothing to hinder a director from loaning money and taking liens on the corporate property to secure him. If he can do that he can lend his credit by indorsing its paper in order to obtain needed cash, and secure himself upon the corporation's property. Such transactions are looked upon with suspicion, and strict proof of their *bona fides* is required. But the directors, occupying a fiduciary relation, are not permitted to secure themselves against preexisting liabilities of the corporation upon which they are already bound, or for money they have already loaned, when the corporation is in declining circumstances and verging on insolvency. They cannot be permitted to take advantage of their intimate knowledge of the corporation's affairs for their own benefit at the expense of the general creditors," citing *Edwards v. Supply Co.,* 150 N. C., 171; *Powell v. Lumber Co.,* 153 N. C., 56; *Whitlock v. Alexander,* 160 N. C., 479. These cases are in line with others cited to us by the plaintiff, *Pender v. Speight,* 159 N. C., 612; *McIver v. Hardware Co.,* 144 N. C., 478; *Steel Co. v. Hardware Co.,* 175 N. C., 450; *Graham v. Carr,* 130 N. C., 271. The case of *Graham v. Carr, supra,* appears to be decisive of the mate-

rial question raised in our case. The following was there held to be the law, quoting from the head-notes:

"1. A sale by a trustee of *an insolvent corporation* of bonds and capital stock belonging to it to one of its directors, is valid if made in good faith and for full value.

"2. A director of *an insolvent corporation,* being a surety for the payment of corporate debts, cannot apply the proceeds derived from the sale to him of corporate property to the payment of such debts."

Upon the question of over valuation alleged by the plaintiff, it is said in *Whitlock v. Alexander, supra,* at p. 473: "The officers of the corporation are supposed, and are held to act with good sense and reasonable business prudence. In 10 Cyc. it has been said that the belief that a prudent and sensible business man would honestly hold in the ordinary conduct of his own business affairs is what constitutes good faith in the valuation of property for which the stock of a corporation is issued." These principles, when applied to the facts of this case, as found by the judge, are sufficient to justify his conclusion that the defendants are not liable to the plaintiff. If the company was paid full value for its stock and bonds, and especially as defendants at the time were the only creditors, and there was no actual intent to defraud Gilmer & Moore, who are the only creditors for whose benefit this suit was brought, we are wholly unable to see how they can successfully assail this transaction. The case, as it seems to us, is not brought within the principles stated in any of the cases, forbidding officers having superior knowledge of the particular company's affairs to prefer themselves, and thereby impair, or prejudice, the rights of other creditors. But it appears further that the defendants paid, at the company's request, six thousand dollars, in discharge of the debt against the company of $17,500, secured by a mortgage on all of its property, for which debt they were secondarily liable. They were, therefore, subrogated *pro tanto* to the rights and the lien, under the mortgage of the creditors to whom the money was paid. *Publishing Co. v. Barber,* 165 N. C., 478; *Whitlock v. Alexander, supra; L. T. & S. Deposit Co. v. Gomeringer,* 236 Pa. St., 179; *Bushkirk v. Sanders,* 70 W. Va., 363; *Paton v. Robinson,* 81 Conn., 547; *Brinckerhoff v. Holland Trust Co.,* 159 Fed. Rep., 200; 6 Pom. Eq. Jur. (3 ed., 1905), sec. 921. In any view, therefore, Mr. Julius C. Martin, the trustee, under the $8,000 deed of trust, himself an eminent lawyer, decided correctly when he paid the surplus of the proceeds of the sale in his hands, after satisfying the secured debt and costs, to the defendants. We therefore affirm the judgment of the Superior Court.

The reversal of the referee's finding concerning the sale of the hotel property to the company, and replacing it with the finding of the court that the sale was made honestly, in good faith, and for full value, long

before Gilmer & Moore became creditors, and that there was no actual intent to defraud them, appear as the outstanding facts of the case, which are fatal to the plaintiff's recovery.

In regard to the defendants' appeal, as to the legal effect of the judgment in *Gilmer & Moore v. The Franklin Park Improvement Company,* is was agreed that if the decision in the plaintiff's appeal is affirmed, the defendants' appeal should be dismissed, and it is so ordered.

Plaintiff's appeal affirmed.

Defendants' appeal dismissed.