MRS. M. E. DAVIS, WIDOW OF R. B. DAVIS, DECEASED, AND OTHERS, HEIRS AT LAW AND DISTRIBUTEES, OR NEXT OF KIN, AND A. S. BUGG AND W. M. BAIRD, ADMINISTRATORS DE BONIS NON OF R. B. DAVIS, DECEASED, *v.* O. C. DAVIS, AS ADMINISTRATOR OF R. B. DAVIS, DECEASED, AND THE FIDELITY AND DEPOSIT COMPANY OF BALTIMORE, MARYLAND.

(Filed 27 September, 1922.)

**Reference—Findings—Judgments—Appeal and Error.**

> In passing upon the report of a referee, it is incumbent upon the judge to deliberate upon the evidence covered by the exceptions, and thereon find such facts as will sustain his own conclusion; and where the judge has found the same facts as those found by the referee, but has overruled the referee's conclusions thereon, which the referee's findings support, the judgment will be set aside in the Supreme Court, on appeal, so that the matter will be further passed upon in the Superior Court according to law.

APPEAL by plaintiff from *Allen, J.,* at January Term, 1922 of WARREN.

R. B. Davis died 28 September, 1914, and on 22 October, 1914, O. C. Davis, one of the defendants, qualified as his administrator, with the

other defendant, the Fidelity and Deposit Company, as his surety. O. C. Davis resigned as such administrator in 1918, and A. S. Bugg and W. M. Baird were appointed administrators *de bonis non* of the estate of the said R. B. Davis, and these are among the plaintiffs in this action. The other plaintiffs are the widow and children of R. B. Davis, some of whom are of age, and others are infants, appearing by their guardian, H. T. Egerton.

This action was brought for an accounting against O. C. Davis, former administrator, and his surety.

It will appear that the administrator, upon his qualification, instead of proceeding to settle the estate, continued the business of his intestate and engaged in farming, merchandising, running sawmills and cotton gins. Plaintiffs contend that he mixed all these operations with his administrator's accounts and conducted these affairs without system or bookkeeping from the time of his qualification in 1914 until his resignation in 1918. Plaintiffs further allege that after an effort to secure from the administrator a settlement of his account with the estate of his intestate, three accounts have been filed by him, and that an examination will show that all have been different.

The first account, filed 2 March, 1917, shows that the administrator, O. C. Davis owes the estate $165. The next account, filed 3 August, 1917, shows that the estate has to its credit $445.05. In order to reach this balance, particular attention is called by plaintiffs to item "For feeding 7 mules and horses 517 days, at 50 cents each, $1,809.50." This item, which will be more particularly considered hereafter, was entered as a credit to the administrator. In his recapitulation, following his conduct of the business, there are listed debts and liabilities amounting to $877.23. The clerk appointed a referee, and he went over the account and found a balance in favor of the estate of $2,788.57. The administrator filed still another statement, called a final statement, showing that he has in hand $1.75; indebtedness, $4,242.28; assets, $3,216.58; leaving a balance due by the estate of $1,025.70. One item of assets was a bill due by the administrator himself—a store account—amounting to $175.38.

The clerk thereupon entered judgment, in which he holds that it would be to the interest of all parties concerned to have a new administrator appointed to wind up the estate, the present administrator, O. C. Davis, and his bond to be liable, until a proper accounting can be had with the new administrator. This judgment was entered by the clerk 21 March, 1918. Thereupon, O. C. Davis resigned, and A. S. Bugg and W. M. Baird were appointed as administrators, and then this action was brought with these, and the others named, as parties plaintiffs. The account was referred to Mr. Joseph P. Pippen, September Term, 1919.

DAVIS *v.* DAVIS.

The evidence is set out, and the administrator's various accounts, showing his dealings with the estate and his handling of the assets in administration of the estate. He conducted the business four years, ran the store twelve months, conducted the sawmill two years, and sold cotton, as plaintiffs allege, without charging himself with it. As to his compensation, the administrator testified: "I was to receive $1,000 per year, commencing 1 October, 1914, and I ceased work on 1 January, 1916." It seems that he made this contract with the widow of the intestate. As to his conduct of the business, the administrator uses this language: "According to the figures, it looks like $2,000 short. I filed three final accounts, each one different."

The referee filed his report and found the defendant to be chargeable for building a postoffice building with $238.08. He also finds that he is chargeable with the sum of $1,809.50 for feeding mules, but that this was an unintentional error on the part of the administrator. He also finds that the mules were allotted to the widow for her year's support, and concludes that the estate was not responsible for their feed.

The conclusion of the referee is that the administrator and his surety was chargeable with building the postoffice, $238.08. Amount credited to himself for feeding the mules belonged to the estate, $1,809.50, and rent for house for himself and family, $120, which was decided in their favor by the referee.

Plaintiffs further contend that, unless his conduct of the store and lumber business is ratified and confirmed by the court, the administrator and his bond are further chargeable with such sums, with reference to the expense of same, as have been set out in his report at pages 53, 54, 55, 56, 57, and 58 of the record.

The judge below rendered the judgment set out at pages 65 and 66 of the record. The plaintiffs waived the court's overruling the exceptions as to the following items: Building postoffice, $238; rent of home, $120. But they excepted to the ruling of the judge as to the credit claimed by the administrator of $1,809.50, it being for the feeding of the mules, which was decided in their favor by the referee.

The plaintiffs relied upon but one exception to the judgment and, for the purpose of deciding it, waived their other two exceptions.

We find that the report of the referee closes with the following paragraphs:

"The referee therefore concludes that the defendant administrator and his bondsmen are properly chargeable with $238.08 for building the postoffice, etc., and with the sum of $1,809.50 feeding mules, etc., and with reasonable rent for the dwelling-house occupied by himself and family, that is, the sum of $120; and that unless his conduct of the store business and of the lumber business is ratified and confirmed by this

court, said defendant administrator and his bond are further chargeable with such sums with reference to the expense of same as have been heretofore set out.

"The referee desires to state that in his opinion any error of omissions or commissions that may have been made by the defendant were made wholly in error and by mistake, and that the conduct of all of his affairs as said administrator has been done conscientiously and honestly.

"The referee regrets that he cannot make a more illuminating report, but honestly believes that were he endowed with the wisdom of Solomon and with only such records as he has before him he could make but little improvement upon this report so far as his conclusions of facts are concerned. The affairs of this estate were kept in such chaotic condition as to defy intelligent analysis by the ordinary mortal.

　　　　　　　　　　　　"Respectfully submitted,

　　　　　　　　　　　　　　"JOSEPH P. PIPPIN, *Referee.*"

The defendant O. C. Davis, former administrator of his brother, R. B. Davis, excepted to the charging of the item of $1,809.50 for feeding the mules against him by the referee, as follows: "Exception 4. Defendant excepts to the finding of fact and conclusion of law that defendant O. C. Davis and his bond are chargeable with $1,809.50 for feeding 7 mules 517 days. Plaintiffs contend, and the referee finds, that this credit allowed by the clerk, and found by Referee Baird, to be actually less than it cost, should be struck out of the credit side of the account."

The judge, after preliminary recitals, not necessary to be stated here, adjudged as follows: "The court, after argument of counsel of plaintiffs and defendants, and after full consideration, being of opinion, from the report of the clerk and the evidence and the findings of the referee, that the defendant administrator, in all of his transactions and dealings with the property of the estate of his deceased brother, R. B. Davis, acted conscientiously and honestly, at considerable sacrifice of his personal interest and without gain to himself, and that the estate benefited by his administration, doth find and adjudge that the defendants are not liable to the plaintiffs; and the other, or third exception, relating to the cost of the feeding of the mules, is sustained, and it is adjudged thereupon that the plaintiffs take nothing by their action, and that the plaintiffs and their surety pay the cost of the same, including one-half of $50 to the referee, J. P. Pippin, and one-half of $50 to be paid by the defendants."

Plaintiffs excepted, and appealed.

*B. B. Williams, T. M. Pittman, and Daniel & Daniel for plaintiffs.*
*T. T. Hicks & Son for O. C. Davis.*
*Tasker Polk & Son for bonding company.*

Davis *v.* Davis.

WALKER, J., after stating the material facts:   It is apparent from the record and judgment that the merits of this case have not been reached, and there is danger of doing grave injustice to the plaintiffs if the facts are not more definitely stated.

The plaintiffs restricted their case, as presented here, to one exception, which was that relating to the ruling of the court upon the item as to the feeding and keep of the mules, asserting that the judge had not properly found and stated the facts connected with it, and further, and more particularly, that the referee decided this item with them, and that the judge should not, therefore, have reversed this ruling and given judgment for the defendants without himself finding and stating the facts and his conclusions of law, so that exception could properly be taken to them.   The referee finds that this credit, which was allowed the administrator, O. C. Davis, was an unintentional error.   This surely must have been overlooked by the usually careful and painstaking judge who presided at the hearing of this case.   No specific allusion is made to this item in the administration account of $1,809.50 for feeding the mules, and there is no finding, and certainly no adequate statement of the facts to sustain the judgment, or to enable us properly to consider and pass upon it.

It was not the question whether O. C. Davis, as administrator, had acted "honestly and conscientiously" in the execution of his trust, but whether he had negligently collected the assets of the estate, as the law required of him, and legally disbursed them, and when we come to consider the question as to the item of $1,809.50 raised by the plaintiffs' exception, we must necessarily inquire whether the defendant fed the mules from corn, fodder, etc., belonging to the estate, as was contended by the plaintiffs, or whether, in doing so, he used his own money in the purchase of their food, or his own corn, fodder, etc.   This was the vital question for decision, and yet there is no finding of fact by the judge upon which we can base that crucial decision in the case.   We cannot adopt the findings of the referee and sustain the judgment, as he found with the plaintiffs, and we are required, in order to sustain the ruling of the court, to do so in total ignorance of the real facts as to the disputed item, and injustice may thereby be done to one or the other of the parties, which must not happen, if we can fairly and legally avoid such an untoward result.

In *Smith v. Smith,* 123 N. C., 229, a case in principle somewhat like this, at p. 234, the Court, after questioning the justice of permitting the statute of limitations to be pleaded at that stage of the case, says:   "The court allowed the motion of defendant for leave to amend the answer and plead the statute of limitations, and defendant filed his plea accordingly.   And thereupon the Court doth adjudge that the plaintiff's cause

of action is barred by the statute of limitations. The judgment further declared that the defendant's exceptions to the report and account filed are allowed, and the plaintiff's application for an injunction to restrain the defendant from selling the land to collect the debt referred to in the pleadings as per note and mortgage is disallowed. The last was clearly only the conclusion of the Court as to the legal effect of the statute of limitations upon the indebtedness of the defendant to the plantiffs as set out in the complaint; for it was made without any finding of facts by his Honor. When the judge finds no facts, it is presumed that he adopted those found by the referee. *McEwen v. Loucheim,* 115 N. C., 348; *Bancroft v. Roberts,* 91 N. C., 363. But it is apparent that he did not adopt the findings of the referee, for the referee found them all in favor of the plaintiff, and the judgment is against the plaintiff. In order that the defendant's exceptions to the report of the referee should have been sustained, it was necessary for the court to have reviewed and set aside the facts found by the referee, and to have found the facts himself in favor of the defendants. This he did not do. As, therefore, there was no finding of facts by his Honor, and the findings of the referee were not approved, there is error in that part of the judgment which sustains the defendant's exceptions and denies the application for the injunction." The judgment in this case is not as much warranted as was the one in that case, for here the judge approved the referee's findings of fact, and then decided contrary to them, as the referee found the facts with the plaintiffs and disallowed the credit of $1,809.50, for feeding the mules, to the defendant, which now appears to have been the correct view of this item in the account. This evidently was an inadvertence on the part of the learned judge, as the referee's findings of fact and the allowance of the credit for $1,809.50 cannot well stand together. If the judge intended to allow the credit, he should have found facts, as said in *Smith v. Smith, supra,* which would have sustained his ruling, and to that extent he should have disapproved the findings of the referee.

We held in *Thompson v. Smith,* 156 N. C., 345: "If there is any evidence to support the findings, and no error has been committed in receiving or rejecting testimony, and no other question of law is raised with respect to the findings, we accept what the judge has found as final, as we do in the case of a jury. When exceptions are taken to a referee's findings of fact and law, it is the duty of the judge to consider the evidence and give his own opinion and conclusion, both upon the facts and the law. He is not permitted to do this in a perfunctory way, but he must deliberate and decide as in other cases—use his own faculties in ascertaining the truth, and form his own judgment as to fact and law. This is required not only as a check upon the referee and a safeguard against any possible error on his part, but because he cannot review the

referee's findings in any other way." *Malloy v. Cotton Mills,* 132 N. C., 432; *Lambertson v. Vann,* 134 N. C., 108; Clark's Code (3 ed.), p. 564, and cases there collected; *Ramsey v. Browder,* 136 N. C., 251; *Comrs. v. Packing Co.,* 135 N. C., 62.

The trouble in this case is that there is confusion, if not contradiction, in the ruling of the court, when considered in connection with the referee's findings of fact, and we cannot proceed to judgment without having the two in some way reconciled with each other.

The judgment will be set aside, which will leave the report of the referee before the court for its further consideration, but with special reference to the item of $1,809.50 for feeding the mules, about which the judge may adopt the referee's findings of fact, and his conclusion of law in favor of the plaintiffs, or he may reverse or modify the same and find the facts himself, or take such other action as may conform to the course and practice of the court, and as will disclose the legal and equitable rights of the respective parties, a final judgment to be rendered, subject to exception and appeal.

There is error in the judgment and proceedings, and this will be certified.

Error.